

FILED

2005 NOV 30 PM 3: 31

CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
TOLEDO

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | |
|---|---|
| MAGNUM TOWING & RECOVERY, LLC<br>3400 South Avenue<br>Toledo, Ohio 43607 ) | CASE NO. 3:04 CV 7671 |
| ) | |
| and ) | JUDGE JAMES G. CARR |
| ) | |
| ANNA PETREY<br>3400 South Avenue<br>Toledo, Ohio 43607 ) | |
| ) | |
| Plaintiffs ) | |
| ) | |
| vs. ) | |
| ) | |
| CITY OF TOLEDO<br>525 North Erie Street<br>Toledo, Ohio 43624-1393 ) | |
| ) | |
| and ) | **PLAINTIFFS' MOTION FOR** |
| ) | **PARTIAL SUMMARY** |
| OFFICER KATHY TRAUTMAN<br>c/o Toledo Police Department<br>525 North Erie Street<br>Toledo, Ohio 43624-1393 ) | **JUDGMENT** |
| ) | |
| and ) | |
| ) | |
| CAPTAIN JEFF HENESSEY<br>c/o Toledo Police Department<br>525 North Erie Street<br>Toledo, Ohio 43624-1393 ) | |
| ) | |



Litigation ensued.  Anna Petry d.b.a. Magnum Towing sued the City of Toledo seeking to gain the "Class A" license and access to the police tow list.  The case of *Petry v. City of Toledo, et al., Case No. 3:98 CV 7188.* United States District Court for the Northern District of Ohio. Western Division. was eventually settled.  As part of the settlement, Magnum was issued a Class A license and placed upon the police tow list.  Magnum began operations as a police "for hire motor vehicle transportation service" in 1998. with its primary lot located at 515 Wamba Street. Toledo, Ohio 43607.  Magnum added an auxiliary lot at 3400 South Avenue, Toledo, Ohio 43609 approximately six months later.  The settlement agreement was entered into with the understanding that: a)  Magnum would move its operations permanently to the South Avenue location.; b) Magnum was to complete the preparations for the South Avenue location within "the time prescribed by law"; c) that the necessary special use permit (SUP) would be expedited through the City of Toledo's Plan Commission and Council Commission; and, d) that the City would cease any and all retaliatory actions against Magnum.

Police tows in the City of Toledo are allegedly governed by the Toledo Municipal Code Chapter 765, et seq.  *Copy of code attached as Exhibit A.*  Effective November 25, 2003. TMC § 765.12 was amended to add § (h) which provides as follows:

> "(h) A permittee shall remit to the City of Toledo ten dollars ($10.00) on a quarterly basis for every vehicle towed or item of personal property towed separately. pursuant to this Section.  This payment to the City of Toledo shall be required regardless of whether or not the permittee receives payment from the vehicle owner.  Failure to remit this payment within thirty (30) days of invoice date from the City of Toledo Department of Finance shall be cause for revocation of Police Towing Permit."

TMC § 765 et seq. was further amended on November 25, 2003 to change the fee split for the auctioned vehicles stemming from police ordered tows.  This amendment changed the fee split

3

from 80% of the proceeds applied towards the towers bill, with the remaining 20% going to the City, to the City receiving 60% of the proceeds and the towers receiving only 40%. While this amendment was not to take effect until November 25, 2003, it was applied retro-actively to the previous quarter.

TMC § 765 et seq. was further amended on January 9. 2005 as follows (the amended language is underlined):

765.01 Definitions.

(e) "permitee" means any licensee holding a valid Class A or Class B safety permit. Any violation of this chapter by an agent or employee of the licensee shall be deemed a violation by the licensee.

(m) "Storage facility" means any location which has been licensed for storage. intended by an applicant to be licensed for storage or which has been designed by the Director of Public Safety as a storage facility, used or intended to be used to impound towed vehicles including any premises. auxiliary sites. lots, yard and buildings.

765.03. Class A tow permit fee and qualifications.

(a)(5) if the permittee wishes to engage in the storage of vehicles towed pursuant to police order, provide storage space for a minimum of one hundred (100) vehicles, at least three (3) of which shall be inside and at the permittee's primary premises. At least twenty-three (23) shall be at the permittee's primary premises and the remainder may be at an approved auxiliary site. Permittees authorized to make heavy duty tows for the Police Department shall. in addition, provide storage space for three (3) semi-tractors and trailers at the permittee's primary premises or at an approved auxiliary site.

765.05 Safety equipment and premises requirements.

(e)(3) if a Class A licensee wishes to engage in the storage of vehicles towed pursuant to police order. any open area storage facility which is used for storage, shall be enclosed with a solid. non-transparent. well maintained. substantial fence which shall be at least eight (8) feet in height

4

(with the lower six (6) feet of same non-transparent) with a monitored electronic alarm system.

765.09. Police ordered towing and storage.

(b) When the Police Records Section orders inside storage for a police ordered tow, it shall be the duty of the Class A permittee to store the towed vehicle inside a facility operated by the licensee to protect it for evidentiary purposes or tow the vehicle to a facility designated by the Director of Public Safety.

765.15. Tow directly to storage facility.

(a) Any police ordered tow shall be promptly and directly made to the licensee's primary premises or, in the case of a heavy duty tow, to the licensed premises or auxiliary site of the licensee or to a storage facility owned or operated by the City of Toledo at the direction of the Police Department.

A new Section was also added: 765.12. Fees for police ordered tows by Class A permittees.

(1) For any vehicle towed to a City of Toledo owned or operated storage facility, a permittee shall be permitted to charge the City of Toledo up to $55.00 per vehicle for any vehicle as described in paragraph (a) above and up to 65% of the fees listed in paragraphs (b), (c), (d), (e) and (f) above. No permittee shall be required to remit ten dollars ($10.00) per vehicle for any vehicles towed to a City of Toledo owned or operated storage facility.

On or about September 2, 2005, the City of Toledo opened its own impound lot at Dura Avenue. Since the City's lot opened, all police ordered tow calls Magnum has received have been ordered to be taken to the City owned lot. The City of Toledo has further made it clear that absent special circumstances, all future police ordered tows will be directed to the City owned lot. The City of Toledo has further ordered that all vehicles towed for the Toledo Police, including those vehicles which may currently be stored at the various towers lots, are to be taken to the City's lot. Fees to be paid to the towers, including tow fees and storage fees already

accrued. any future storage fees, as well as junk vehicle and auction vehicle fees, will be discounted to 65% of what would normally be owed.  *See* Exhibit B. as well as amended TMC § 765.12 (I).

Since the conclusion of the first lawsuit putting Magnum on the police tow list, Magnum was to be treated no better and/or no worse than any other tow operator on the police tow list. From the inception of Magnum's entry into the market as a police tow operator. the City of Toledo has engaged in unfair and retaliatory actions against Magnum.  The City has made it clear that they would still prefer Magnum not to be on the police tow list. which would effectively put Magnum out of business.

Magnum had no choice but to file suit if it wanted to stay in business.  Plaintiffs filed the instant action in October of 2004.  Defendants answered. and the parties then engaged in settlement talks.  Discovery was effectively stayed.  When it became apparent that the parties could not reach a settlement agreement, Plaintiffs filed their First Amended Complaint on or about September 15. 2005.  Defendants filed a Motion to Dismiss Plaintiffs Complaint on or about November 1, 2005. a matter still pending before the court.  Plaintiffs now file for partial summary judgment. as there are no material facts in dispute relative to certain portions of Plaintiffs' Complaint. and Plaintiff is entitled to judgment as a matter of law on those issues.

## STANDARD OF REVIEW

Summary Judgment is only appropriate where the pleadings, depositions. answers to interrogatories. and admissions on file together with the affidavits. if any. show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  *Durham v. Nu'man,* 97 F.3d 862 (6th Cir. 1996), *citing* Fed. R. Civ. P. 56 (c).  All

6

facts, as well as all inferences drawn therefrom, must be viewed in the light most favorable to the nonmoving party. *Id. citing Matsushita Electric Industrial Co., Ltd., et al. v. Zenith Radio Corp., et al.,* 475 U.S. 574 (1986). The nonmoving party must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56 (e).

**ARGUMENT**

Plaintiffs have alleged that Defendants have deprived them of their constitutionally protected due process rights. *See* 1st Amended Complaint. Counts III and IV. On at least two occasions. Defendants have denied Plaintiffs' rights to due process. Furthermore, as an ongoing policy, Defendants are depriving Plaintiffs' of their due process rights.

On July 14. 2003, Magnum was removed from the police towing list. The reason Magnum was removed from the list was that construction at Magnum's South Avenue location was not proceeding quickly enough for the City's satisfaction. Magnum appealed the suspension the same day, expecting to be re-instated to the tow list pending their appeal to the Tow Review Board. as is consistent with TMC § 765.26 (c) ("Should an appeal be made by the permittee to a suspension or revocation after receipt of the notice of the director of Public Safety. **said suspension or revocation shall be held in abeyance pending decision on the case by the Towing Board of Review"**). Magnum was informed that their removal from the tow list was "non-appealable" and was not returned to the towing list until Plaintiff filed for a Temporary Restraining Order with this court. The City afforded Plaintiff no procedural due process in this instance.

On June 4. 2004, Magnum was again removed from the police towing list. The reason Magnum was removed was for allegedly failing to remit to the City the $10 per tow "payment"

7

which had been added to TMC § 765 et seq. pursuant to the November 25, 2003 amendment to the municipal code. Again, Magnum appealed the City's actions the same day. Again, Magnum was informed that their removal from the tow list was "non-appealable", and again Magnum was not put back on the tow list pending an appeal. Again, the City failed to afford Magnum the procedural due process owed to Magnum.

The threshold question in this matter is whether Magnum has a "property" interest in doing police tows worthy of constitutional protection. "The requirements of procedural due process apply **only** to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property. When protected interests are implicated, the right to some kind of **prior** hearing is paramount." *Board of Regents of State Colleges, et al. v. Roth,* 408 U. S. 564, 569, 570 (1972) (emphasis added). "Property interests are not created by the Constitution, they are created and their dimensions are defined by existing rules or understanding that stem from an independent source such as state law . . ." *Cleveland Board of Education v. Loudermill, et. al.,* 470 U. S. 532 (1985); citing *Board of Regents v. Roth,* supra at 577, and *Paul v. Davis,* 424 U. S. 693, 709 (1976). "Property interests subject to procedural due process protection are not limited by a few rigid, technical forms. Rather, "property" denotes a broad range of interests that are secured by existing rules or understandings. A person's interest in a benefit is a "property" interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit . . .". *Perry v. Sindermann,* 408 U. S. 593 (1972); citing *Board of Regents v. Roth,* supra at 571, 572 and 577.

In the case at hand, Magnum certainly has a property interest in doing police tows worthy of constitutional protection. The City's own code, TMC § 765 et seq., provides the "rules or

8

mutually explicit understandings" supporting Magnum's claim of a constitutionally protected property interest requiring procedural due process standards be met. TMC § 765 et seq. provides a litany of requirements that must be met before a tower can obtain a Class A license and perform police tows. Towers, among other obligations under the Code, must obtain a license and safety permit (TMC § 765.26 and TMC § 765.02 (a)(1)), pay an annual licensing fee (TMC § 765.03(a)), have a certain type and quantity of tow trucks available (TMC § 765.03(b)), and must maintain storage facilities meeting certain requirements (TMC § 765.03(b) and TMC § 765.05 (e)). Magnum met all of the requirements and was in fact issued a Class A tow license and was in fact on the list doing police tows. Once Magnum obtained the "benefit" of being on the police tow list, said benefit cannot be taken away without due process being provided.

The Toledo Municipal Code itself implicitly acknowledges that a police tow license is a property interest which must be provided due process protection. The Code provides that a tower may appeal a suspension or revocation (TMC § 765.23 (e)), with the suspension or revocation stayed pending the appeal (TMC § 765.24(c)), and with the right to a hearing (TMC § 765.24(b). Even the City itself acknowledges that Magnum has a property interest which is entitled to due process protection. In Defendants Motion to Dismiss, Defendants state "Plaintiffs are afforded all process due through appeal rights provided in Chapter 765 of the Municipal Code." *See* Page 14 of Defendants Motion to Dismiss.

While Plaintiffs would disagree with Defendants contention that Plaintiffs are "afforded all process due" through the appeal rights in the Municipal Code, it is irrelevant for purposes of this discussion. Even assuming, *arguendo*, that the appeal rights as provided in the Code are sufficient due process protection, it makes no difference if, as in the two instances noted above,

9

the City chooses to **ignore it's own code and not provide the process due!** As such, Plaintiff is entitled to summary judgment on this issue.

The further issue concerns the amendment to the Toledo Municipal Code passed by the City in January of 2005. This amendment was passed in anticipation of the City opening it's own storage lot for police ordered towed vehicles. The net effect of the amendment was to reduce the tow fees Magnum would receive from $85 per tow to $55 per tow, as well as virtually eliminating the fees Magnum had been receiving for storage of vehicles, auctioned vehicles, and junked vehicles. Admittedly, even though the amendment was passed in January of 2005, it was not enforced until the City actually managed to open it's own lot on September 2, 2005. As such, Magnum was not really "damaged" until after September 2, 2005.

However, once the City did open it's own lot, Magnum has been damaged and continues to be damaged. Most importantly, Magnum has been given no due process relative to the loss of Magnum's property interest in storing police ordered tow vehicles, nor any due process relative to the City reducing the per tow fee from $85 to $55. The City just went ahead and did it. Magnum is afforded no opportunity for hearing, no procedural due process whatsoever. The City effectively stated we are going to take $30 out of your pocket for every police tow and eliminate your right to collect storage fees, and if you don't like it, tough.

Again, the threshold question is whether Magnum has a constitutionally protected property interest in collecting fees for storing police ordered tows and in getting $85 per police tow as opposed to $55. Plaintiffs would maintain that said interests are protected and cannot be taken away absent due process. As discussed above, it is difficult to dispute that Magnum has a protected property interest in doing the actual police ordered tow. However, the question

10

remains whether that protected property interest encompasses the collection of fees for storage of vehicles and whether the property interest encompasses collecting $85 per tow as opposed to $55 per tow. "The Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person has **already acquired** in specific benefits." *Board of Regents v. Roth,* supra at 576. (emphasis added). The City's attempt to deprive Magnum of 35% of the fees which Magnum had already accrued prior to the City opening it's own lot clearly violates the procedural protection of property afforded by the Fourteenth Amendment. *See* Exhibit B. as well as amended TMC § 765.12 (I). These fees had already accrued and the right to collect them had already been acquired prior to the City opening it's own lot and implementing the January amendment to the Municipal Code.

Once the City opened it's own lot and took away all of Magnum's interest in collecting any storage fees as well as taking away $30 per police tow. Magnum's due process rights were equally trampled upon. Magnum had "already acquired" a claim of entitlement to store police tow vehicles and collect $85 per police tow. Magnum paid their fees and renewed their license in January of 2005. prior to the amendment to the Municipal Code. The class A license was to be valid for a year. Magnum had to comply with all of various regulations imposed by the Municipal Code, including all of the Code provisions regarding storage facilities and the storage of particular vehicles. prior to having their license renewed. It is noteworthy that even under the new Municipal Code as amended in January of 2005. Magnum is still required to comply with all of the provisions regarding storage facilities for a Class A license even though the City no longer permits Magnum to store police tow vehicles. In short, Magnum has complied with the legislation burdens as imposed by the Municipal Code with the reasonable expectation that they

11

would have the benefits as set out in the pre-January 2005 amendment to the Municipal Code. Not only does Magnum have a claim of entitlement to store police tow vehicles and receive $85 per tow, Magnum, prior to the City opening their own lot on September 2. 2005. did in fact store police tow vehicles, collect the fees as specified in the pre-January 2005 Code, and collect $85 per tow. These were benefits Magnum had **already acquired** prior to the City implementing the January amendment to the Municipal Code. As such, the City taking away these benefits without any procedural due process given violates Magnum's Fourteenth Amendment rights.

The City's actions in taking away $30 per tow and the right to store police tow vehicles and collect fees violates not only Plaintiffs' procedural due process rights, but further violates the Fifth Amendment's (as applied to the States via the Fourteenth Amendment) prohibition against the State taking property without just compensation. The City's actions **do** amount to a flat out "taking" of Magnum's property. The City has maintained that the January amendment taking away $30 per police tow and taking away the right to store police tow vehicles and collect fees does not amount to a "taking" triggering constitutional protection. The City's argument relies on the case of *D.A.B.E., Inc. v. City of Toledo,* (N.D. Ohio. 2003) 292 F. Supp. 2d 968. The City's reliance is misplaced. The Plaintiffs in *D.A.B.E.* alleged a regulatory taking which denied them economically viable use of their land. The court in *D.A.B.E.* held that while Toledo's smoking ban may adversely affect the Plaintiffs' bar businesses, it did not amount to a taking. Plaintiffs in the case at hand are not saying that the City is "taking" an economically viable use of Plaintiffs' land. Plaintiffs realize that they may store other non-police tow vehicles at their site or use their land for numerous other purposes. What the Plaintiffs are saying is that they had a constitutionally protected property interest in collecting $85 per police tow and in collecting

12

storage fees for storing police tows. The Plaintiffs in *D.A.B.E.* asserted no such property interest in allowing smoking in their establishments. The City's argument is akin to saying that it's O.K. to suppress your free speech, as long as we don't impinge upon your freedom of religion. Each and every time the City deprives Magnum of the right to collect $85 for a police tow it literally "takes" $30 out of Magnums pocket. Each and every time the City deprives Magnum of the opportunity to store vehicles and collect fees it literally "takes" money out of Magnum's pocket. Each and every time Magnum is forced to accept 65% of the fees it is entitled to it literally "takes" money out of Magnum's pocket. As a matter of law, Magnum is entitled to damages for the deprivation of procedural due process incident to the City's implementation of the January 2005 amendment to the Municipal Code, as well as entitled to just compensation for the taking of their property.

## CONCLUSION

For the foregoing reasons. Plaintiffs request an order of summary judgment on Plaintiffs due process claims, and further request the matter be set for hearing to assess damages, potential punitive damages, and attorney fees.

Respectfully Submitted.

Timothy A. Magee. Esq. (#0066023)
347 N. Main Street. Suite 3
Bowling Green. Ohio 43402
Ph. (419) 353-1856
Fax (419) 353-1858
E-mail: magee_law@cros.net

*Counsel for Plaintiffs*

13

## CERTIFICATE OF SERVICE

A copy of the forgoing was sent to James Burkhardt. Esq. City of Toledo Department of Law. via ordinary mail this _____ 30 _____ day of November. 2005.

Timothy A. Magee

58.

## CHAPTER 765
### Towing Services

765.01  Definitions.
765.02  Permit required, exemptions; terminations.
765.03  Class A tow permit fee and qualifications.
765.04  Inspection: special use permit; issuance of Class A permit.
765.05  Safety equipment and premises requirements.
765.06  Class B tow permit qualifications; inspection; issuance of safety permit.
765.07  Police towing districts; police tow list; tow log.
765.08  Rosters.
765.09  Police ordered towing and storage.
765.10  Response to a tow call.
765.11  Tow scene release and cleanup.
765.12  Fees for police ordered tows by Class A permittees.
765.13  Storage charge for police ordered tows.
765.14  Third party tow and storage fees.

765.15  Tow directly to storage facility.
765.16  Reporting to Police Records Section; records.
765.17  Safekeeping of towed and stored vehicles.
765.18  Storage facilities; hours, manning, fee posting.
765.19  Inspections at storage facilities.
765.20  Repairs of stored vehicles.
765.21  Release of stored vehicles.
765.22  Junking police ordered stored vehicles.
765.23  Powers of the Director of Public Safety.
765.24  Towing Board of Review; hearings; defaults; claims.
765.25  Disposal of unclaimed vehicles.
765.26  Tow vehicle operator's license required; application; issuance of license.
765.99  Penalty.

### CROSS REFERENCES
Impounding - see TRAF. 303.08; 351.22
General business licensing provisions - see BUS. REG. Ch. 701

#### 765.01. Definitions.
(a) "Auxiliary site" means a vehicle pound for the storage of heavy duty tows and other towed vehicles located at a place other than the towing operator's premises.

(b) "Full-time" means twenty-four hours per day seven days per week, for the term of the license.

(c) "Normal business hours", for Class A permittees, means from 8:00 a.m. to 6:00 p.m. each day for the term of the permit and, for Class B permittees operating any storage facility, means any six consecutive hours in a day, six days per week, for the term of the license.

(d) "Permit" means a safety permit granting authority, pursuant to the Municipal Code, for a towing operator to either:

(1) Perform vehicle tows, or

(2) Perform vehicle tows and store towed vehicles.

(e) "Permittee" means any holder of a valid Class A or Class B safety permit. Any violation of this chapter by an agent or employee of the licensee shall be deemed a violation by the licensee.

(f) "Person" means every natural person, partnership, corporation, fiduciary, association or other entity.

(g) "Police ordered stored vehicle" means any vehicle in storage after the completion of a police ordered tow.

(h) "Police ordered tow" means any towing order issued by the Toledo Police Department pursuant to the Municipal Code or by the statutes of the State.

(i) "Premises" and "primary premises" means the place where both the towing operator's office and the vehicle-pound of the towing operator are located.

(j) "Private tow" means any vehicle tow performed at the request or direction of the owner, or the agent of or the authorized representative of the owner.

(k) "Roll back truck" means a truck equipped with an electric or hydraulic winch and a platform having a minimum length of seventeen feet nine inches designed for the platform to be lowered to the ground to receive a vehicle pulled on it by the electric or hydraulic winch and then carried rather than pulled or towed.

(l) "Storage" means retention of a towed vehicle in the custody of a towing operator after completion of the tow. Legally permitted fees for storage may be charged by licensees.

(m) "Storage facility" means any location which has been licensed for storage or which is intended by an applicant to be licensed for storage. Storage facilities, used or intended to be used to impound towed vehicles include any premises, auxiliary sites, lots, yard and buildings.

(n) "Store" means to place in storage.

(o) "Third party stored vehicle" means any vehicle in storage after completion of a third party tow.

(p) "Third party tow" means any tow requested or ordered by any person who is neither the owner of the towed vehicle nor the agent or authorized representative of the owner, and made from or to any location within the City. A repossession tow made to or from any location within the City is a third party tow.

(q) "Tow" means to move or remove a vehicle to another location using a tow vehicle. Towing includes the preparation of, the connection of and the disconnection of the vehicle and the tow vehicle. Legally permitted fees may be charged for towing by licensees.

(r) "Towing operator" means a person owning a business engaged in the towing of vehicles and, in some cases, in the storage of towed vehicles.

(s) "Tow vehicle" means any truck or other vehicle adapted or used for the commercial purpose of towing, winching, carrying or otherwise removing another vehicle.


EXHIBIT A

# CHAPTER 763
Temporary Stores

EDITOR'S NOTE:  Former Chapter 763 was repealed by
Ordinance 483-86, passed July 1, 1986 and
Ordinance 359-87, passed May 12, 1987.

(t) "Vehicle" means every device defined in Section 301.67 of the Traffic Code.

(u) "Tow vehicle operator" means any person driving or operating a tow vehicle.
(Ord. 77-98. Passed 2-17-98.)

765.02. Permit required, exemptions; terminations.
(a) No person shall operate or cause to operate a tow service on any street or highway within the City, nor shall any person operate or cause to operate any facility for the purpose of storage within the City, without first obtaining from the Director of Finance one of the following:

(1) A Class A safety permit for the purposes of performing private, third party and police ordered tows and providing for the storage thereof. Class A licensees shall only perform police ordered tows of large Vehicles (police ordered heavy duty tows) and provide for the storage thereof when authorized by the Director of Public Safety pursuant to this chapter.

(2) A Class B safety permit for the purposes of performing private and third party tows and, if so authorized, providing for the storage thereof.

(b) The following shall be exempt from the provisions of this section, except for third party tows made and/or stored within the City:

(1) Any towing operator whose place of business is outside the City, whose tow trucks are licensed pursuant to any laws and/or ordinances similar to this chapter, and who provides to the Director of Finance and the Police Records Section copies of such laws and/or ordinances and such licenses issued pursuant thereto.

(2) Any ICC or PUCO license holder whose place of business is outside the City and who provides to the Director of Finance and the Police Records Section copies of such ICC or PUCO licenses.

(3) Any operator of a tow vehicle owned by a political subdivision or public utility.

(4) This section shall not apply when the property being towed is owned by the person doing the towing of said property or when the property being towed has been picked up outside of the City and is either in the process of being delivered to a location within the City or is being towed through the City to be delivered elsewhere or doing business with a towing company that has been issued a safety permit by the City of Toledo.
(Ord. 77-98. Passed 2-17-98.)

765.03  Class A tow permit fee and qualifications.
(a) Permit application.
(1) The application for a Class A permit shall be made to the Director of Finance upon such forms as shall be prescribed by the Director of Public Safety. Each application for permit shall include a filing fee of two thousand dollars ($200.00) for the first vehicle and fifty dollars ($50.00) for each subsequent vehicle, which shall not be refundable and which shall be the annual permit fee for the Class A permit. The permit year shall commence on January 1st and expire on December 31st of the succeeding year.

(2) The applicant, at the time of filing the application, shall furnish a certificate of insurance or an acknowledgement thereof, by an insurance carrier licensed to do business in the State, evidence of a garage keeper's legal liability to protect property left in his care, custody or control in an amount not less than one hundred thousand dollars ($100,000) and general liability in an amount not less than fifty thousand dollars ($50,000). In addition thereto, evidence of public liability and property damage insurance coverage in an amount of not less than three hundred thousand dollars ($300,000.00) per person coverage, and seven

hundred fifty thousand dollars ($750,000) per occurrence shall be provided. In addition, each applicant shall have a two million dollar ($2,000,000.00) umbrella policy in effect and applicable on hook insurance. Such policy shall provide that it shall not be terminated until after at least ten (10) days' notice shall have been given by the company issuing such policy in writing to the Director of Public Safety. The policy shall indemnify the City, its officers, agents and employees, and any and all third persons from loss or damage, by the reason of negligent or unlawful act omitted or performed by the tow applicant, its agents or servants in conjunction with towing of any vehicle in response to a police call. This section applies to Class A applicants and tow operators authorized to make heavy duty tows.

(3) The application shall contain the following business information of the applicant:

A. Name. If the applicant is a corporation or an incorporated partnership, the name shown on the application shall be the name shown on the articles of incorporation.

B. Address.

C. Location of the applicant's premises and any auxiliary site for heavy duty storage.

D. Period in which applicant has been engaged in business.

E. Telephone number(s).

F. Any previous City license(s) or permits obtained, refused, revoked and/or suspended.

G. Suspension(s) from the police tow list and/or notice(s) of warning for a towing violation received during the two years preceding the date of application.

(4) The application shall contain the following for every person who is the sole owner of the applicant's business, who is a partner or limited partner in the applicant's partnership business, or who is an officer in the applicant's corporate business:

A. Name.

B. Address.

C. Telephone number(s).

D. Physical desc:    .. including height, weight, color of eyes and hair, and date or birth.

E. Business, occupation or employment during the two years preceding the date of the application.

F. Criminal history including the date and place of any convictions, except traffic offenses.

G. A set of fingerprints, obtained by the Toledo Police Department, unless a set is currently on file with the Department.

(b)  Qualifications of Class A permittees (if selected to conduct police tows).
Every permittee shall:

(1) Maintain full-time towing service for the Police Department.

(2) Provide for the release of vehicles to owners, or their agents or designees, at the licensee's storage facility or storage facilities during normal business hours. Vehicles shall not be released at any other time except as required by Section 765.18 or upon special request by the Police Records Section.

(3) Provide full-time telephone communications with the Police Records Section.

(4) Provide, for police ordered tows only, the availability of at least three (3) approved tow vehicles, all equipped with wheel lifts, as required by Section 765.05, and a roll-back truck, which shall be, at all times, operable and manned with vehicle drivers holding a heavy equipment commercial driver's license (CDL), and a City of Toledo tow operator's license.

(5) Provide storage space for a minimum of one hundred (100) vehicles, at least three (3) of which shall be inside and at the permittee's primary premises. At least twenty-three (23) shall be at the permittee's primary premises and the remainder may be at an approved auxiliary site. Permittees authorized to make heavy duty tows for the Police Department shall, in addition provide storage, space, for three, (3) semi-tractors and trailers at the permittee's primary premises or at an approved auxiliary site.

(6) Maintain a valid special use permit for the permittee's primary premises and, when authorized to perform police heavy duty towing, maintain a valid special use permit for any auxiliary site used by the permittee.

(7) Provide to the Police Records Section a valid copy of any lease applicable to any tow vehicle approved for police ordered tows. Such leased equipment shall be used exclusively by the permittee, be leased by the year, and be stored at the permittee's primary premises.
(Ord. 77-98, Passed 2-17-98.)

**765.04. Inspection; special use permit; issuance of Class A permit.**
(a) Upon receipt of the aforesaid application, certificate of insurance or acknowledgement thereof, and the permit fee, the Director of Finance shall notify the Director of Public Safety who shall cause an inspection to be made of the applicant's primary premises, any auxiliary site, fixtures and equipment of the applicant. Should the same comply with provisions of this chapter and with the rules promulgated by the Director of Public Safety, the Director of Public Safety shall approve the application.

(b) Should the applicant not hold a valid special use permit for the applicant's premises and/or any auxiliary site to be used by the applicant, the Director of Public Safety shall provide the applicant with a letter of intent to issue a Class A towing permit contingent upon granting of a special use permit by the City.

(c) When the Director of Finance is assured that a special use permit has been issued for the applicant's premises and any auxiliary site to be used by the applicant, the Director of Finance shall issue to the applicant a Class A towing permit and, as evidence thereof, shall issue a decal for each tow vehicle bearing thereon an assigned tow vehicle permit number. The decal shall be permanently affixed to the lower left corner of the windshield of each such tow vehicle.

(d) When the Class A permit has been issued and the decals affixed as above, the Commander of the Police Records Section shall cause the name of the permittee to be entered upon the police tow list. The Commander of the Police Records Section shall divide the City of Toledo into at least three (3) approximately equal towing districts as determined by the Safety Director and shall maintain a police tow list assigning each permittee to one of the tow districts to provide as nearly as possible equal towing service in each of the districts and attempting to assign the towing company to the district within which the tower maintains its principal place of business, provided however, in the event that a tower cannot be assigned to the district where its principal place of business is located, it shall be assigned to an adjacent district. Police calls within any given district shall be rotated among the towers assigned to that district.
(Ord. 77-98. Passed 2-17-98.)

**765.05. Safety equipment and premises requirements.**
(a) Safety equipment requirements, Class A.

(1) Truck chassis shall be rated by the manufacturer as one (1) ton or more, or equivalent gross vehicle weight.

(2) Vehicle must be equipped with one (1) rear view mirror on each side.

(3) Vehicle must be equipped with a wheel lift, and if equipped with a winch and boom it shall be rated by the manufacturer as having a four (4) ton capacity and equipped with steel cable having a minimum diameter of three-eighths (3/8) inch, excluding rollback trucks.

(4) Vehicle shall be equipped with at least one (1) amber emergency flashing light bar visible from all sides, to be operated at tow scene or while actually towing vehicle, and one (1) work light situated so as to illuminate the winching or craning operations at night.

(5) Vehicle must meet all other requirements of State law and Municipal ordinance.

(6) Towing vehicles must carry the following additional equipment:

A. One (1) set of dolly wheels.

B. One (1) eight (8) foot pickup chain.

C. Safety chains.

D. One (1) broom and shovel.

E. One (1) all-purpose fire extinguisher (2A-20 B C rated) maintained in operable condition.

F. Three (3) flares.

G. Three (3) reflectors for use at accident scenes.

H. One (1) snatch block.

I. "T" hooks.

J. Hand tools, to include screwdriver, pliers, wire cutters and an adjustable wrench.

K. Adequate rope or line to secure loose parts and/or to tie the steering wheel.

(b) **Equipment safety requirements, Class A - heavy duty.**
(1) Truck chassis shall be rated by the manufacturer as three (3) tons, or more, or equivalent gross vehicle weight.

(2) Vehicle must be equipped with a winch and boom rated by the manufacturer as having a twenty-five (25) ton capacity and equipped with steel cable having a minimum diameter of five-eighths inch.

(3) Vehicle must be equipped with rearview mirrors on each side.

(4) Vehicle must be equipped with at least one (1) amber emergency flashing light bar visible from all sides, to be operated at tow scene or while actually towing vehicle, and one (1) work light situated so as to illuminate the winching or craning operations at night.

(5) Vehicle must meet all other requirements of State law and Municipal ordinance.

(6) Towing vehicles must carry the following additional equipment:



19                    Towing Services                    765.06

(d) Vehicle markings.

Class A or Class B licensees shall have imprinted on both sides of any vehicle used as a tow truck the name, address and telephone number of the person, firm or corporation owning such vehicle. If the vehicle is leased, it shall only have imprinted on both sides the name, address and telephone number of the lessee, be it person, firm or corporation. The name shall be printed in letters three (3) inches high and not less than three-eighths (3/8) inch wide, while the address, place and telephone number shall be three (3) inches high and not less than three-eighths (3/8) inches high. Lettering shall be done in a color which will contrast sharply with the background upon which it is painted and shall be placed in such a position as to be easily seen by anyone wishing to identify the vehicle. Markings shall be kept clear and distinct at all times. The im- lining shall be affixed by painting or the use of adhesive decal lettering applied directly to the vehicle surface.

(e) Storage facilities.

(1) The premises of a Class A licensee and any auxiliary site used by a Class A licensee shall be located in the corporate limits of the City.

(2) The premises of a Class A licensee, and any other licensed storage facility used for storage shall, when the same are located within the corporate limits of the City, conform to the applicable requirements of the Municipal Code including the Planning and Zoning Code, the Building Code, the Fire Prevention Code and the Health Code.

(3) Any open area of a storage facility, which is used for storage, shall be enclosed with a solid, nontransparent, well maintained, substantial fence which shall be at least eight (8) feet in height (with the lower six (6) feet of same nontransparent) with a monitored electronic alarm system.

(4) If a Class B permittee is to perform third party tows within the City limits of Toledo, the permittee shall maintain a storage facility within the City limits of Toledo and shall conform to the applicable requirements of the Municipal Code including the Planning and Zoning Code, the Building Code, the Fire Prevention Code and the Health Code. (Ord. 77-98. Passed 2-17-98.)

765.06. Class B tow permit qualifications; inspection; issuance of safety permit.

(a) Class B safety permit application.

(1) The application for a Class B safety permit shall be made in writing to the Director of Finance upon such forms as shall be prescribed by the Director of Public Safety. Each application for safety permit shall include a filing fee of fifty dollars ($50.00) for the first vehicle and fifteen dollars ($15.00) for each subsequent vehicle, which shall not be refundable and which shall be the annual safety permit fee for the Class B safety permit. The safety permit year shall commence on January 1st and shall expire on December 31st.

(2) The applicant, at the time of the filing of the application, shall furnish a certificate of insurance or an acknowledgement thereof, by an insurance carrier licensed to do business in the State, evidence of a garage keeper's legal liability to protect property left in his care, custody or control in an amount not less than twenty-five thousand dollars ($25,000) and general liability in an amount not less than fifty thousand dollars ($50,000). In addition thereto evidence of public liability and property damage insurance coverage in an amount of not less than one hundred thousand dollars ($100,000) per person coverage, and three hundred thousand dollars ($300,000) per occurrence shall be provided.

The provision of this section relating to a garage keeper's legal liability shall not apply to a tow vehicle operator who establishes in writing to the satisfaction of the Director of Finance that such

A. Safety chains.

B. One (1) broom and shovel.

C. Hand tools.

D. Chain binders and extra chains.

E. Two (2) snatch blocks.

F. Scotch blocks or spade on truck.

G. Light bar for towed vehicle.

H. Three (3) flares and three (3) triangle reflectors.

I. Manual brake release pins.

J. Compressed air to apply trailer brakes.

K. Compressed air to release tractor and trailer brakes.

L. Cutting torches must be available.

M. "Yo Dog" or equivalent fifth wheel dolly must be available.

N. One (1) all purpose fire extinguisher in operable condition (2A -20 BC rated).

(c) Safety equipment requirements, Class B.

(1) Truck chassis shall be rated by the manufacturer as three-quarter ton or more, or equivalent gross vehicle weight.

(2) Vehicle must be equipped with one (1) rear view mirror on each side.

(3) Vehicle must be equipped with a winch and boom rated by the manufacturer as having a four (4) ton capacity and equipped with a cable having a minimum diameter of three-eighths (3/8) inch.

(4) Vehicle shall be equipped with at least one (1) amber work light situated so as to illuminate the winching or craning operations at night.

(5) Towing vehicles must carry the following additional equipment:

A. One (1) eight-foot pickup chain.

B. Safety chains.

C. One (1) broom and shovel.

D. Three (3) flares.

E. One (1) all-purpose fire extinguisher (2A-20 BC) maintained in operable condition.

F. Three (3) reflectors.

G. One (1) snatch block.

H. "T" hooks.

I. Adequate rope or line to secure loose parts and/or to tie the steering wheel.

J. Hand tools, to include screwdriver, pliers, wire cutters and an adjustable wrench.

owner does not own, operate, use or maintain garage or vehicular storage facilities as defined herein.

(3) The application shall contain the following business information of the applicant:

A. Name. If the applicant is a corporation or an incorporated partnership, the name shown on the application shall be the name shown on the articles of incorporation.

B. Address.

C. Location of the applicant's headquarters and any storage facility to be used by the applicant.

D. Period in which applicant has been engaged in business.

E. Telephone number(s).

F. Any previous City permit(s) obtained, refused, revoked and/or suspended.

(4) The application shall contain the following for every person who is the sole owner of the applicant's business, who is a partner or limited partner in the applicant's partnership business, or is an officer in the applicant's corporate business:

A. Name.

B. Address.

C. Telephone number(s).

D. Physical description, including height, weight, color of eyes and hair, and date of birth.

E. Business, occupation and employment during the two (2) years preceding the date of application.

F. Criminal history including the date and place of any convictions, except traffic offenses from the Toledo Police Department.

G. A set of fingerprints, obtained from the Toledo Police Department unless previously on file with the Department.

(b) **Qualifications of Class B safety permit holder.**
Every Class B safety permit holder shall:

(1) When a storage facility is operated by the safety permit holder, provide for the release of vehicles during normal business hours and at such other times required by Section 765.18 hereof.

(2) Maintain insurance coverage, for the term of the safety permit, in the amount stated in (a) (2) of this section.

(3) Not be issued a safety permit if, within ten (10) years preceding the date of application, any person listed on the application pursuant to subsection (a)(4) hereof has been convicted of: a felony, a theft offense involving any vehicle or any vehicle part or accessory, or any two (2) other theft offenses. A theft offense shall be defined pursuant to Chapter 545 of the General Offenses Code.

(c) **Inspection.**
Upon receipt of the aforesaid application certificate of insurance or acknowledgement thereof, and the permit fee, the Director of Finance shall notify the Commander of the Police Records Section who shall cause an inspection to be made of the applicant's headquarters, any storage facility used by the applicant, and fixtures and equipment of the applicant. Should the same comply with the provisions of this chapter and with the rules promulgated by the Director of Public Safety, the Director shall approve the application.

(d) **Issuance of Class B permit.**
When the Director of Public Safety has approved the application, the Police Department shall issue to the applicant a Class B safety permit and, as evidence thereof, shall issue a decal for each tow vehicle bearing thereon an assigned tow vehicle license number. The decal shall be permanently affixed to the lower left corner of the windshield of each such tow vehicle.

(e) **Rights of Class A permittees.**
Except for those other duties and requirements imposed upon a Class A licensee by this Municipal Code, the Class A licensee shall have all the rights and privileges of a Class B safety permit holder.
(Ord. 77-98. Passed 2-17-98.)

**765.07. Police towing districts; police tow list; tow log.**
(a) For the purpose of providing efficient and expeditious towing service for the Toledo Police Department, the Director of Public Safety shall establish the number and boundaries of police towing districts within the City.

(b) The Director of Public Safety is also authorized to change the number and boundaries of police towing districts as the Director may deem appropriate. Whenever such changes are made, each Class A licensee shall be notified in writing ten (10) days prior to the effective date of the change.

(c) A police tow list of Class A permittees shall be maintained by the Police Records Section. The police tow list shall contain the names of the Class A licensees in each police towing district in alphabetical order. The police tow list shall also contain the names, in alphabetical order, of those Class A licensees authorized to perform police ordered heavy duty towing. The Police tow list for police ordered heavy duty towing shall be City-wide unless the Director of Public Safety establishes heavy duty police towing districts.

(d) Calling for police ordered tows within police towing district shall be rotated in order among the Class A licensees currently on the police tow list for such tow district. A like, but separate, procedure shall be used for police ordered heavy duty tows.

(e) Should no Class A permittee listed in a police towing district be available for a police ordered tow in that district, the Police Records Section may call a Class A licensee from another towing district to effect expeditious service.

(f) Should the Toledo Police Division deem a life-threatening or other emergency to exist, the rotation of calls may be temporarily abrogated. Restoration of normal rotation will be immediately restored when the emergency is terminated.

(g) Should a permittee be suspended from the police tow list, such suspension shall not abrogate any other rights or obligations of the licensee pursuant to this chapter.

(h) The Police Records Section shall keep a tow log upon which shall be listed the time a call for a police ordered tow is made, the Class A licensee called, the location of the vehicle to be towed, and such other information as the Director of Public Safety may determine.

(i) The above tow log shall, at all reasonable times, be open to public inspection.
(Ord. 77-98. Passed 2-17-98.)

**765.08. Rosters.**
The Police Records Section shall establish and maintain the following rosters:

(a) Class A permittees on the police tow list in each police towing district, by alphabetical order.



(b) Letters of interest from Class B safety permit holders to become Class A permittees by date of receipt.

(c) Class A permittees on the police tow list who are authorized to perform police ordered heavy duty towing. The roster shall be an alphabetical listing either City-wide or by heavy duty police towing district if such districts have been designated by the Director of Public Safety.
(Ord. 77-98. Passed 2-17-98.)

765.09. Police ordered towing and storage.
(a) Police officers are authorized to provide for the removal of a vehicle as described in the Traffic Code.

(b) When the Police Records Section orders inside storage for a police ordered tow, it shall be the duty of the Class A permittee to store the towed vehicle inside and to protect it for evidentiary purposes.
(Ord. 77-98. Passed 2-17-98.)

765.10. Response to a tow call.
(a) When a Class A permittee has been called for police ordered tow, the permittee or permittee's agent shall arrive at the tow scene within thirty minutes of the call and shall be ready to begin preparation of the vehicle for towing.

(b) When a Class A or Class B permittee has been called by the owner or the police for a private tow of a vehicle and when such vehicle is not legally parked either upon a street or highway or upon public property, the permittee or permittee's agent shall arrive at the tow scene within thirty (30) minutes of the call and shall be ready to begin preparation of the vehicle for towing.
(Ord. 77-98. Passed 2-17-98.)

765.11. Tow scene release and cleanup.
(a) Whenever, in the case of a third party tow pursuant to Section 4513.60 of the Ohio Revised Code or Section 351.22 of the Traffic Code, the owner or operator of a vehicle arrives after the vehicle has been prepared for removal but prior to its actual removal from private property, the owner or operator shall be given the opportunity to pay a fee, of not more than one-half of the towing charge permitted by Section 765.12, to the permittee. Upon receipt of payment of that fee, the permittee or permittee's agent shall release the vehicle to the owner or operator.

(b) Whenever, in the case of a police ordered tow or in the case of a third party tow which is not to be made from private property, the owner or operator of a vehicle arrives after the vehicle has been prepared for removal, but prior to its actual removal, the owner or operator shall be given the opportunity to pay a fee, of not more than half the towing charge permitted by Section 765.12, to the licensee or the licensee's agent unless the Police Division directs that the vehicle is to be towed and stored for evidentiary purposes. Upon receipt of payment of that fee, the permittee or permittee's agent shall release the vehicle to the owner or operator.

(c) Whenever a permittee is responsible for towing a vehicle involved in a collision upon any street or highway or upon any other public property, the permittee or permittee's agent shall remove from the tow scene all vehicle debris caused by the collision such as glass, metal, plastic or vehicle parts.
(Ord. 77-98. Passed 2-17-98.)

765.12. Fees for police ordered tows by Class A permittees.
The maximum fee which may be charged by any permittee hereunder for removing a vehicle in response to a police call shall be as follows:

(a) For a tow of any passenger car, motorcycle, stake, panel or dump truck, loaded or empty, up to and including one-half ton, the charge shall be sixty-five dollars ($65.00), except that effective July 1, 2000, the charge shall be seventy dollars ($70.00).

(b) For a tow of any passenger car, stake, panel or dump truck:

(1) Loaded or empty, up to and including one-half ton when hooked together by a tow bar, sixty-five dollars ($65.00), except that effective July 1, 2000, this amount shall be increased to seventy dollars ($70.00).

(2) Loaded or empty, up to and including one-half ton coupled to utility trailer, sixty-five dollars ($65.00), except that effective July 1, 2000, this amount shall be increased to seventy dollars ($70.00).

(3) Passenger car, stake, panel or dump truck, and tractor coupled to a house trailer, eighty dollars ($80.00).

(c) Trucks:

(1) Removal of trucks, trailers of house trailers:

A. Single unit (empty): $75.00

B. Single unit, three-fourths ton to one and one-half tons (loaded): $95.00

C. Two tons and over (empty): $110.00

D. Less than 20,000 pounds, gross (loaded): $135.00

E. Two unit (empty): $135.00

(2) Removal of trucks and trailers or semi, coupled: $165.00

(3) Removal of trucks and trailers or semi, not coupled (per unit fee): $135.00

(4) Tractor, semi-trailer and four-wheeler: $300.00

(d) Upon approval of the Police Records Section, services other than routine hooking up, when necessary to prepare vehicle for tow, additional tow vehicle and one man for under four tons, seventy dollars ($70.00) per hour; additional heavy-duty tow vehicle and one man for over four tons, ninety-five dollars ($95.00) per hour.

(e) Delay occurring when permittee is ready and prepared to tow, caused by circumstances beyond the control of the licensee, tow vehicle and one man for under four tons per hour, sixty dollars ($60.00); heavy-duty tow vehicle and one man per hour, seventy dollars ($70.00).

Delay time shall not begin prior to thirty minutes after arrival at tow scene.

(f) Additional cost incurred by contracting for other equipment or services not required by this chapter shall be passed on to the owner of such vehicle or truck, and the licensee may add a markup on such cost, not to exceed twenty percent (20%) of such cost for his service in arranging for such equipment or service, supervising the operation thereof, paying or pledging his credit for payment thereof, and other similar services.

(g) For the purpose of this chapter, routine hooking up shall include using dollies, tying the steering wheel, disengaging linkage and any other operation that is normally done prior to towing a vehicle.
(Ord. 77-98. Passed 2-17-98.)

765.13. Storage charge for police ordered tows.
(a) Inside storage.

(1) Passenger vehicles, utility trailers and trucks under one and one-half tons per day: $10.00

Effective July 1, 2000, the fee shall be twelve dollars ($12.00).

Case: 3:04-cv-07671-JGC  Doc #: 36  Filed: 11/30/05  21 of 32.  PageID #: 203

(2) Motorcycles per day: $9.00

Effective July 1, 2000, the fee shall be ten dollars ($10.00).

(3) Trucks, tractors, utility trailers or trucks over one and one-half tons per unit per day or fraction thereof: $18.00

Effective July 1, 2000, the fee shall be twenty-one dollars ($21.00).

(b) Outside storage.
(1) Passenger vehicles, utility trailers or trucks under one and one-half tons per day: $8.00

Effective July 1, 2000, the fee shall be nine dollars ($9.00).

(2) Motorcycles per day: $7.00.

Effective July 1, 2000, the fee shall be eight dollars ($8.00) per day.

(3) Trucks, tractors, trailers or house trailers over one and one-half tons per day, per unit: $14.00

Effective July 1, 2000, the fee shall be sixteen dollars ($16.00).

(c) Inside storage fees shall only be charged when inside storage is ordered by the Police Records Section and shall only be charged for that time period during which such vehicle is physically stored inside.
(Ord. 77-98. Passed 2-17-98.)

765.14. Third party tow and storage fees.
The maximum fee which may be charged by any permittee hereunder for a third party tow and storage shall be as follows:

(a) For any motor vehicle having a laden gross vehicle weight up to and including 15,000 pounds:

(1) Towing charge: (1) seventy dollars ($70.00); which shall constitute routine hooking up and shall include using dollies, tying the steering wheel, disengaging linkage, and other operation that is normally done prior to towing of a vehicle.

(2) Storage charge, per twenty-four hour period: $8.00

(b) For a truck, bus or a combination of a commercial tractor and trailer or semitrailer, having a laden gross vehicle weight in excess of 15,000 pounds:

(1) Towing charge: $100.00

(2) Storage charge, per twenty-four hour period: $12.00
(Ord. 77-98. Passed 2-17-98.)

765.15. Tow directly to storage facility.
(a) Any police ordered tow shall be promptly and directly made to the permittee's primary premises or, in the case of a heavy duty tow, to the licensed premises or auxiliary site of the licensee.

(b) Any third party tow shall be promptly and directly made to an approved storage facility.

(c) No such towed vehicle shall be parked, or placed, in an alley nor parked, or placed, for longer than one-half hour upon any street or highway.

(d) Unless prior to the completion of the tow the Police Records Section is advised of a physical problem involving the driver or a mechanical problem involving the tow vehicle or the vehicle being towed, a violation of this section shall be deemed to exist if the vehicle being towed is not stored in the appropriate approved storage facility within two (2) hours from the time

that a call is made to the permittee for a police ordered or third party tow.
(Ord. 77-98. Passed 2-17-98.)

765.16. Reporting to Police Records Section; records.
(a)(1) Immediately upon completion of a police ordered tow, the permittee or permittee's agent shall report to the Police Records Section, for the vehicle towed, the make, license plate number, vehicle identification number, date of the tow, location from which vehicle was towed, and the location where the vehicle is stored.

(2) In the case of a third party tow, the permittee or permittee's agent shall report to the Police Records Section, before actually hooking up the vehicle involved, the make, license plate number, vehicle identification number, date of tow, time of the tow, location from which vehicle was towed, location where vehicle is stored and the person ordering the tow. This section applies to all vehicle repossessions.

(b) The permittee shall record the information in subsection (a) above.

(c) For a police ordered or third party ordered tow, the permittee shall maintain every record required by this section for whichever of the following time which is longer:

(1) Two (2) years for each police ordered tow.

(2) Seven (7) years for each third party tow.

(3) Two (2) years for each junked vehicle after junking is authorized in accordance with the provisions of this chapter.
(Ord. 77-98. Passed 2-17-98.)

765.17. Safekeeping of towed and stored vehicles.
(a) Each permittee shall be responsible for the full and complete safekeeping of any vehicle towed by the licensee and of any vehicle stored by the licensee, including any personal property in the vehicle.

(b) No vehicle, which is in the custody of the licensee by towing or by storage, shall be altered, repaired or junked, except as provided in this chapter. Any such alteration, repair or junking shall be deemed to be a violation of this section by the licensee.

(c) Any vehicle, which according to the records of the Police Records Section has been stored in a storage facility required by this chapter and has not been released pursuant to this chapter and which is not found in such storage facility upon inspection by the Toledo Police Department, shall be considered as having not been kept safe by the licensee responsible for the storage facility. Any licensee, who fails to have such vehicle in the licensee's storage facility required by this chapter, shall be deemed to be in violation of this section.
(Ord. 77-98. Passed 2-17-98.)

765.18. Storage facilities; hours, manning, fee posting.
(a) In addition to the normal business hours of operation of storage facilities required by this chapter, the licensee, who has stored at any of the licensee's storage facilities a vehicle towed from a private property tow-away zone, shall at any time during the day or night provide for the release of such vehicle upon presentation of proof of ownership and payment of towing and storage fees due the licensee.

(b) For any vehicle which has been towed as a police ordered or third party tow, except for a third party tow made from a private property tow-away zone, and which is stored at a storage facility licensed pursuant to this chapter, the licensee shall provide for inspection and release of the vehicle at such facility during normal business hours. The licensee shall also provide the acceptance of payment of towing and storage fees due the licensee at such facility during such hours.

(c) The licensee shall conspicuously post the fees for the towing and storage of police ordered and third party tows at every storage facility where such tows are stored.
(Ord. 77-98. Passed 2-17-98.)

**765.19. Inspections at storage facilities.**
(a) Every licensed storage facility shall be open to inspection by the Toledo Police Department during normal business hours. The Division of Police is authorized to inspect:

(1) Any storage facility licensed under the provisions of this chapter to ensure compliance with the Municipal Code;

(2) Any police ordered or third party stored vehicle;

(3) Any equipment licensed under the provisions of this chapter; and

(4) The towing, storage and junking records which the licensee is required to keep by the provisions of this chapter.

(b) Only upon release by the Police Records Section, any police ordered stored vehicle shall be available, at a storage facility of the licensee during normal business hours, for inspection by the owner, his agent, or his designee.

(c) Any third party stored vehicle shall be available, at a storage facility of the licensee during normal business hours, for inspection by the owner, his agent or his designee.

(d) Any such owner, agent, or designee shall be given the opportunity to inspect the vehicle prior to payment of any towing or storage fees due the licensee therefor.
(Ord. 77-98. Passed 2-17-98.)

**765.20. Repairs of stored vehicles.**
(a) No Class A licensee shall repair any police ordered stored vehicle unless both:

(1) Written authorization is obtained from the owner, and

(2) A written release is issued by the Police Records Section.

(b) No licensee shall repair any vehicle obtained by a third party tow unless written authorization is obtained from the owner.
(Ord. 77-98. Passed 2-17-98.)

**765.21. Release of stored vehicles.**
(a) No police ordered stored vehicle shall be released by the licensee to any person except upon receipt of a written release of such vehicle by the Police Records Section.

(b) No police ordered stored vehicle shall be junked by the licensee, or purchased by the licensee, except upon receipt of a written release of such vehicle by the Police Records Section.

(c) Whenever a written release for a police ordered stored vehicle is issued by the Police Records Section and received by the licensee and payment is made for any towing or storage fees due the licensee, the owner, his agent or his designee shall be permitted to remove such vehicle from the licensee's storage facility.

(d) Whenever payment is made for any third party towing or third party storage fees due the licensee, the owner, his agent or his designee shall be permitted to remove such vehicle from the licensee's storage facility.

(e) Whenever a licensee releases a third party stored vehicle, the licensee shall immediately notify the Police Records Section thereof.
(Ord. 77-98. Passed 2-17-98.)

**765.22. Junking police ordered stored vehicles.**
(a) A licensee, wishing to junk any police ordered stored vehicle, shall submit a junk list of such vehicles to the Police Records Section.

(b) When an officer of the Toledo Police Department has inspected all vehicles on the junk list and has determined which of such vehicles are authorized to be junked by notation on the junk list, the licensee or his agent shall acknowledge authorization therefor by signing the junk list.

(c) The licensee shall not junk any vehicle which has not been authorized to be junked pursuant to this section or pursuant to Ohio Revised Code 4513.60 through 4513.63, inclusive.
(Ord. 77-98. Passed 2-17-98.)

**765.23. Powers of the Director of Public Safety.**
(a) The Director of Public Safety is hereby empowered to determine the need for and to establish, enforce and rescind regulations necessary to make effective the provisions of this chapter. Such regulations, when established or rescinded, shall be published in the City Journal. Such regulations shall be promulgated to ensure a reasonable and efficient system of vehicle towing and storage in the City.

(b) Should the Director of Public Safety find that a permittee has violated any provision of this chapter or any regulation of the Director of Public Safety, the permittee shall be subject to a verbal warning, a written warning, suspension from the police tow list, suspension of license or revocation of permit. Determination of penalty shall be made by the Director.

(c) Should a permittee be charged with a criminal act relating to the permittee's towing and/or storage operation, it shall be the duty of the Director of Public Safety, immediately upon discovering such charge, to take such action as may be appropriate and which may include:

(1) Suspension of the permittee from the police tow list,

(2) Suspension of the permittee's permit pending a decision by the Court or a decision by the Towing Board of Review, and/or

(3) Removal of any police ordered stored vehicles located in any storage facility of the permit.

(d) Should a permit be convicted of a criminal act relating to the permittee's towing and/or storage operation, it shall be the duty of the Director of Public Safety, immediately upon discovering such conviction, to take such action as may be appropriate and which may include:

(1) Suspension of the permittee's permit pending a decision by the Towing Board of Review.

(2) Revocation of the permittee's permit subject to the permittee's appeal rights, and/or

(3) Removal of any police stored vehicles located in any storage facility of the licensee.

(e) Whenever the Director of Public Safety assesses any suspension or revocation described in this Section, the Director shall so notify the permittee and the permittee shall have seven (7) calendar days from receipt of said notice to have delivered a written appeal of any such suspension and/or revocation to the Chairman of the Towing Board of Review.
(Ord. 77-98. Passed 2-17-98.)

**765.24. Towing Board of Review; hearings; defaults; claims.**
(a) Towing Board of Review.
The Towing Board of Review shall hear all appeals from suspension and revocation orders by the Director of Public Safety. The Towing Board of Review shall be composed of the



Director of Law or his designee, who shall be chairman, the Director of Public Service or his designee, and the Director of Public Safety or his designee. The Board shall establish reasonable rules of procedure, to include the conduct of hearings. The Board may sustain, reverse or modify any suspension or revocation assessed by the Director of Public Safety. The Board's decision shall be binding and shall be made within thirty (30) days from receipt of the permittee's appeal. In any case where the permittee has been charged with a criminal act relating to the permittee's towing and/or storage operation, the Board may extend its decision to await decision by the court.

(b) Hearings; rights of permittee.

Upon receipt of notice of appeal from the permittee, the Chairman of the Towing Board of Review shall notify the permittee of the date, time and place of hearing. The permittee shall have the following rights:

(1) Be represented by legal counsel.

(2) Issue subpoenas to compel attendance of necessary witnesses and the production of necessary documents.

(3) Provide, at the permittee's expense, an official court reporter.

(4) Request separation of witnesses at the hearing.

(5) Present evidence and testimony at the hearing.

(6) Cross-examine witnesses at the hearing.

(7) Such other rights as may be contained in the Board's rules of procedure.

(c) Defaults.

Should the permittee fail to appeal a suspension or revocation issued by the Director of Public Safety, said suspension or revocation shall be applied. Should an appeal be made by the permittee to a suspension or revocation after receipt of the notice of the Director of Public Safety, said suspension or revocation shall be held in abeyance pending decision on the case by the Towing Board of Review. Should the permittee fail to appear at the scheduled hearing on the permittee's appeal before the Towing Board of Review, the Board shall hear any testimony and evidence presented and render its judgment accordingly.

(d) Claims.

Should the Director of Public Safety assess a suspension or revocation pursuant to this chapter and should the Towing Board of Review not sustain any revocation or any suspension period in whole or in part which has been served by the permittee, the permittee shall have a claim against the City in a dollar amount not to exceed the equivalent of two (2) tows per day pursuant to Section 765.12(a), for each day of penalty not sustained by the Board. Should the Director of Public Safety order the removal of police ordered stored vehicles pursuant to subsections (c) and (d) of Section 765.23 in conjunction with the assessment of a suspension or revocation, and should the Towing Board of Review not sustain any revocation or any suspension period in whole or in part which has been served by the permittee, the permittee shall have a claim against the City in a dollar amount not to exceed the equivalent of storage fees, which would be due the permittee, for the vehicles removed at the rates pursuant to Section 765.13 multiplied by the number of days of penalty not sustained by the Board.
(Ord. 77-98. Passed 2-17-98.)

765.25. Disposal of unclaimed vehicles.

(a) Unclaimed motor vehicles left on private or public property and ordered into storage shall be disposed of at the order of the Police Division to a motor vehicle salvage dealer or scrap metal processing facility as defined in Ohio Revised Code 4737.05, or to any other facility owned by or under contract with the City of Toledo, for the disposal of such motor vehicle, or shall be sold by the Police Division or licensed auctioneer at public auction, after giving notice thereof by advertisement, published once a week for two successive weeks in a newspaper of general circulation in the county.

(b) Any moneys accruing from the disposition of an unclaimed motor vehicle that are in excess of the administrative, auctioneer, towing and storage expenses resulting from the removal and storage of the vehicle shall be credited to the General Fund. If such moneys are less than the expenses resulting from the removal and storage of the towing company performing the service, and twenty percent (20%), less administrative and auctioneer expenses, shall be paid to the General Fund.
(Ord. 77-98. Passed 2-17-98.)

765.26 Tow vehicle operator's license required; application; issuance of license.

(a) No person shall drive a tow vehicle until he/she has been issued a valid tow operator's license. Every applicant for a license as a driver of a tow vehicle shall make application to the officer on forms to be supplied by the officer. The application, which must be sworn by the applicant, shall set forth that the applicant:

(1) Is a citizen or legal resident of the United States;

(2) Is in compliance with all provisions of the Ohio Revised Code applicable to licensing as a driver and financial responsibility or insurance; and is not under suspension of driving privileges in any state.

(3) Is twenty-one years of age or older.

(4) Is free from defective vision, defective hearing, epilepsy, vertigo, heart trouble and any other infirmity, physical or mental, which would render him unfit for safe operation of a tow vehicle.

(5) Is not addicted to the use of alcohol or drugs.

(6) Has or has not been convicted of a felony, a theft offense involving a motor vehicle, or motor vehicle part or accessory within ten years of application, or any two theft convictions (as defined in T.M.C. 545) within ten years of application.

(7) Has or has not been convicted of a felony or a misdemeanor involving controlled substances or any sex offense (including public indecency) or moral turpitude.

(b) Each applicant must present the following documents with the tow vehicle operator license application:

(1) Driver abstract record obtained from the Bureau of Motor Vehicles.

(2) Criminal background check obtained from the Toledo Police Records Section.

(3) Photographs: two (2) 1" x 1 1/2" photos (machine, studio or polaroid) must be submitted with the application. Photographs cannot be over sixty (60) days old and hats or sunglasses must not be worn.

(4) If driving for a Class A permittee, copy of certificate of completion from state certified commercial drivers' program.

(5) If driving for a Class A permittee, copy of valid commercial driver's license. (May have out of state, but must reside out of state.)

(c) Fee.

Each tow vehicle operator license shall be issued initially upon payment of a twenty-five dollar ($25.00) fee and renewals thereof may be issued for a fee of fifteen dollars ($15.00). Each

application for the replacement of a lost, stolen, or missing license shall be accompanied by a fee of five dollars ($5.00).

(d) Each applicant who will drive for a Class A permittee must hold a valid heavy equipment commercial drivers license (CDL), shall obtain training from a state certified program and shall present a completion certificate. Such licenses will have a "Class A" endorsement affixed to them.

(e) Issuance of Tow Vehicle Operator License. The Safety Director shall conduct an examination of the items set forth on the application and the documents submitted therewith, and if the Safety Director is satisfied that an applicant is a suitable and proper person to drive a tow vehicle, he shall notify the officer in writing and the officer shall issue a license to the applicant upon payment of the proper fee. The issuance of said license shall be deemed a Police Department function and all applicable police record and character checks shall be consented to by the applicant. The Safety Director shall administratively deny the application of any person convicted of (or imprisoned due to such convictions) felonies, theft offenses, drug offenses, or moral turpitude within ten years prior to the application. Any individual administratively denied a license may appeal that denial to the Towing Board of Review. Provided, however, that the Board shall not entertain appeals of persons convicted of motor vehicle theft offenses within ten years prior to the application.

(f) At the time of the issuance of a license, the officer shall also issue an identification card upon which shall be affixed one of the photographs filed with the Director. The identification card shall be carried at all times by the licensee when he is driving a tow vehicle. If the holder will be driving for a Class A permittee, the additional items set forth in subsection (d) hereof, shall apply, and the identification card shall be endorsed with a Class "A" designation.

(g) No person shall deface any license identification card.

(h) Towing operator licenses shall expire on December 31 of the year following that in which they were issued. Licenses must be renewed within thirty (30) days after expiration, otherwise application must be made for a new license as provided for original applicants. Applicants for renewals shall be made to the Director who may authorize renewals of licenses without further examination.

(i) When an applicant has been denied a license, no new application shall be considered for a period of one year.

(j) Marks for violations. For the purpose of regulating licensed tow operators, the Director is authorized to establish a system of violation marks for the violation of traffic ordinances relating to tow vehicles, in accordance with the following classified schedule:

(1) Class I. Four marks shall be entered for each conviction of any of the following offenses:

A. Not having good brakes.

B. Reckless driving.

C. Speeding.

D. Driving left of center of street.

E. Disobeying traffic light, voice or hand signals.

F. Not giving name when requested.

G. Not assisting at, stopping at or reporting accident.

H. Not making complete stops at stop signs.

I. Driving wrong way on one-way street.

J. Operating a tow vehicle without a permit.

K. Not displaying a tow safety permit.

L. Not charging according to rates filed in this chapter for tow fees.

M. Immoral or unlawful use of tow vehicle.

N. Not having a valid driver's license.

(2) Class II

One violation mark shall be entered for each conviction under any traffic ordinance governing tow vehicles not included in Class I. Provided, however, that whenever a driver is fined costs, suspended, then no violation marks shall be given, although the records shall be kept by the Director.

(3) Class III

In addition to violation marks entered on convictions as provided in Classes I and II, the Director may, after hearing, enter marks for minor violations of rules and regulations, not exceeding one mark in any single case.

(k) Suspension for twelve violation marks.

Whenever a licensed driver receives twelve violation marks in accordance with the schedule herein provided, during any twelve month period, it shall be mandatory upon the Director to suspend the license of the driver for a period of thirty days or for any period during which the driver's state drivers license is suspended, whichever is longer.

(l) Suspension for intoxication and for driving intoxicated.

(1) Conviction of driving while intoxicated shall operate as a revocation of any driver's license issued hereunder, and such driver shall not be eligible to receive a new license issued hereunder for a period of one year from the date of such conviction.

(2) Any driver or owner in charge of a tow vehicle found on the public streets who is intoxicated and upon conviction for being intoxicated while being in charge of such tow vehicle, shall have his license suspended by the Safety Director for a period of one year from the date of such conviction.

(m) Revocation mandatory.

The Safety Director shall revoke the license of any licensed driver for any of the following reasons:

(1) Licensee not the holder of a valid drivers license.

(2) Licensee having obtained a license by false statements in his application.

(3) Licensee having become physically or mentally incapable of driving a vehicle or upon information that any condition of the granting of the original license is no longer true.

(4) Licensee having been convicted of any drug-related offense or of a felony or misdemeanor involving moral turpitude.

(5) Licensee knowingly having directly or indirectly charged more than the maximum rates fixed by this Code.

(6) Upon information that unlawful or immoral use has occurred with the knowledge of the person owning the tow vehicle, or the knowledge of the operator of such vehicle, the Safety Director shall revoke the permit for the vehicle involved or the driver's license of the driver involved, or both.

(7) No licensed driver shall deface any safety tow permit or tow driver's license. In case of any violation of this provision the Safety Director shall revoke the driver's license. Such revocation shall be in addition to any other penalty imposed.



(8) Conviction of driving while intoxicated shall operate as a revocation of any driver's license issued hereunder and such driver shall not be eligible to receive a new license for a period of one year from the date of such conviction.

(9) Whenever a licensed driver receives fifteen (15) violation points in any twelve-month period, it shall be mandatory upon the Safety Director to revoke the license of such driver, and such driver shall not be eligible to receive a new license for a period of one year from the date of such revocation.

(10) Whenever a licensed driver is convicted of driving a tow vehicle for which a driver's license has been suspended, it shall be mandatory upon the Safety Director to revoke the license of such driver, and such driver shall not be eligible to receive a new license for a period of one year from the date of such revocation.

(n) Director of Public Safety to have continuing jurisdiction as to licenses.

The Safety Director shall have continuing jurisdiction as to licenses granted hereunder. In the event of misconduct or acts on the part of a licensed driver which shows him to be unfit or unsuitable person to drive a tow vehicle or which would be sufficient to justify the refusal of a license in the case of an original applicant, the Safety Director shall revoke a license already granted. Any such administrative revocation may be appealed to the Towing Board of Review.

(o) Notice regarding violations.

The Chief of Police shall notify the Safety Director, upon forms to be furnished by the Safety Director for that purpose, whenever any licensed driver is charged with or convicted of the violation of any law or ordinance in such a manner as to reflect upon his fitness to operate a tow vehicle. In addition, the Chief of Police shall notify the Safety Director, upon forms to be furnished by the Safety Director for that purpose, of the conviction of any licensed driver for any violation of any ordinance governing tow vehicles, or of any traffic ordinance.

(p) Notice of suspension or revocation.

The Safety Director shall notify the driver of any suspension or revocation of his license, and shall require such driver to turn in his drivers license. Such notification shall be by registered mail or by personal service, directed to the last address of the driver on file with the Safety Director.

(q) Change of address.

Each licensed tow operator shall have his residence address on file with the Safety Director, and in case of change shall notify the Director in writing immediately.
(Ord. 77-98. Passed 2-17-98.)

765.99. Penalty.

(a) Any person, driver, owner, agent or employee who violates any of the provisions of this chapter relative to tow safety permits or driver's licenses, for which no other fine and/or imprisonment is specified, shall be guilty of a misdemeanor of the fourth degree.

(b) No penalty (other than imposition of violation marks and suspensions resulting therefrom as set forth in Toledo Municipal Code Chapter 765) shall be imposed upon any person under this section, if such person is punished for the same violation under the provisions of the Traffic Code.

(c) Any person, firm or corporation of any owner, agent, employee, or driver of a tow vehicle who violates any of the provisions of this chapter, for which no other fine or imprisonment is specified, shall be guilty of a fourth degree misdemeanor.
(Ord. 77-98. Passed 2-17-98.)

Amended TMC §765.12
(Amended 11-25-03)

prepared for removal, but prior to its actual removal, the owner or operator shall be given the opportunity to pay a fee, of not more than half the towing charge permitted by Section 765.12, to the licensee or the licensee's agent unless the Police Division directs that the vehicle is to be towed and stored for evidentiary purposes. Upon receipt of payment of that fee, the permittee or permittee's agent shall release the vehicle to the owner or operator.

(c) Whenever a permittee is responsible for towing a vehicle involved in a collision upon any street or highway or upon any other public property, the permittee or permittee's agent shall remove from the tow scene all vehicle debris caused by the collision such as glass, metal, plastic or vehicle parts.

(Ord. 77-98. Passed 2-17-98.)

## 765.12. Fees for police ordered tows by Class A permittees.

The maximum fee which may be charged by any permittee hereunder for removing a vehicle in response to a police call shall be as follows:

(a) For a tow of any passenger car, motorcycle, stake, panel or dump truck, loaded or empty, up to and including one-half ton, the charge shall be eighty-five dollars ($85.00).

(b) For a tow of any passenger car, stake, panel or dump truck:

(1) Loaded or empty, up to and including one-half ton when hooked together by a tow bar, eighty-five dollars ($85.00).

(2) Loaded or empty, up to and including one-half ton coupled to utility trailer, eighty-five dollars ($85.00).

(3) Passenger car, stake, panel or dump truck, and tractor coupled to a house trailer, ninety-five dollars ($95.00).

(c) Trucks:

(1) Removal of trucks, trailers or house trailers:

A. Single unit (empty): $90.00

B. Single unit, three-fourths ton to one and one-half tons (loaded): $110.00

C. Two tons and over (empty): $125.00

D. Less than 20,000 pounds, gross (loaded): $150.00

E. Two unit (empty): $150.00

(2) Removal of trucks and trailers or semi, coupled: $180.00

(3) Removal of trucks and trailers or semi, not coupled (per unit fee): $150.00

(4) Tractor, semi-trailer and four-wheeler: $315.00

(d) Upon approval of the Police Records Bureau, services other than routine hooking up, when necessary to prepare vehicle for tow, additional tow vehicle and one man for under four tons, seventy dollars ($70.00) per hour; additional heavy-duty tow vehicle and one man for over four tons, ninety-five dollars ($95.00) per hour.

(e) Delay occurring when permittee is ready and prepared to tow, caused by circumstances beyond the control of the licensee, tow vehicle and one man for under four tons per hour, sixty dollars ($60.00); heavy-duty tow vehicle and one man per hour, seventy dollars ($70.00).

Delay time shall start thirty (30) minutes after arrival at tow scene.

(f) Additional cost incurred by contracting for other equipment or services not required by this chapter shall be passed on to the owner of such vehicle or truck, and the licensee may add a markup on such cost, not to exceed twenty percent (20%) of such cost for his service in arranging for such equipment or service, supervising the operation thereof, paying or pledging his credit for payment thereof, and other similar services, upon approval of the Police Records Bureau.

(g) For the purpose of this chapter, routine hooking up shall include using dollies, tying the steering wheel, disengaging linkage and any other operation that is normally done prior to towing a vehicle.

(h) A permittee shall remit to the City of Toledo ten dollars ($10.00) on a quarterly basis for every vehicle towed or item of personal property towed separately, pursuant to this section. This payment to the City of Toledo shall be required regardless of whether or not the permittee receives payment from the vehicle owner. Failure to remit this payment within thirty (30) days of invoice date from the City of Toledo Department of Finance shall be cause for revocation of Police Towing Permit

(Ord. 829-03. Passed 11-25-03.)

### 765.13. Storage charge for police ordered tows.

(a) **Inside storage.**

(1) Passenger vehicles, utility trailers and trucks under one and one-half tons per day:  $15.00

(2) Motorcycles per day: $13.00

(3) Trucks, tractors, utility trailers or trucks over one and one-half tons per unit per day or fraction thereof: $24.00

(b) **Outside storage.**

(1) Passenger vehicles, utility trailers or trucks under one and one-half tons per day: $12.00

(2) Motorcycles per day: $11.00

(3) Trucks, tractors, trailers or house trailers over one and one-half tons per day, per unit: $19.00

(c) Inside storage fees shall only be charged when inside storage is ordered by the Police Records

07/08/2005 12:28 FAX 419 245 3251       VEHICLE IMPOUND OFFICE    → MAGNUM                    ☎ 001/002

# TOLEDO POLICE DEPARTMENT

525 North Erie
Toledo, Ohio 43624
Phone (419) 245-3399
Fax    (419) 245-3251

Michael J. Navarre                                              Jeffrey S. Hennessy
Chief of Police                                                Captain, Records Section
Director of Police Operations

## CONFIDENTIAL

Please deliver the following pages to:

Name: _____           Date:   **7-8-05**

Firm:   **All Tow Permittees**                     Pages:  **2**
                                                           (Including Cover)
From:   **Captain Hennessy**

See attached.



The information and or documents contained in this transmission are confidential and legally privileged.
They are intended ONLY for the person or entity named above. If you are not the intended recipient, you are
hereby notified that any dissemination, distribution, disclosure or copy of this communication is strictly
prohibited. If you have received this telecopy in error, please immediately notify us by telephone to arrange
collect at long distance) to confirm that you will destroy all copies of this transmission.

# TOLEDO POLICE DEPARTMENT

525 North Erie
Toledo, Ohio 43624
Phone (419) 245-3399
Fax    (419) 245-3251

Michael J. Navarre                                    Jeffrey S. Hennessy
Chief of Police                                       Captain, Records Section
Director of Police Operations

## CONFIDENTIAL

Please deliver the following pages to:

Name: _____      Date:   **7-8-05** _____

Firm:   **All Tow Permittees**                Pages:  **2** _____
                                                       (Including Cover)

From:   **Captain Hennessy**

See attached.



EXHIBIT

B

The information and or documents contained in this transmission are confidential and legally privileged. They are intended ONLY for the person or entity named above. If you are not the intended recipient, you are hereby notified that any dissemination, distribution, disclosure or copy of this communication is strictly prohibited. If you have received this telecopy in error, please immediately notify us by telephone (call collect if long distance) to confirm that you will destroy all copies of this transmission.

The new Toledo Police Impound Lot will be open within the next 45 days. This lot is located at 198 Dura Avenue, near Detroit. When the lot opens, <u>all</u> vehicles towed for the Toledo Police will be towed promptly and directly there, unless otherwise directed by the Police Records Bureau.

Towers will bill the City on a monthly basis, and will receive $55 per vehicle for a normal tow. Other fees will be paid up to 65% of the current prices.

In order to make a smooth transition, it will be necessary to determine which towers wish to remain on the police tow list as we have others interested in towing for us.

Please indicate below if you wish to continue towing for the City of Toledo Police Department. Please sign and Fax back to us no later then 8:00 a.m. on 7/13/2005. If you have any questions, please call Captain Hennessy at 245-3103.

Yes, I wish to remain on the tow list when the police impound lot opens.

No, I will no longer be towing for the City Police when the police impound lot opens.

_____                    7-12-05
Owner or President                                          Date