IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| MAGNUM TOWING & RECOVERY, LLC<br>3400 South Avenue<br>Toledo, Ohio 43607 | ) | CASE NO. 3:04 CV 7671 |
| | ) | |
| and | ) | JUDGE JAMES G. CARR |
| | ) | |
| ANNA PETREY<br>3400 South Avenue<br>Toledo, Ohio 43607 | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| CITY OF TOLEDO<br>525 North Erie Street<br>Toledo, Ohio 43624-1393 | ) | |
| | ) | |
| and | ) | **Plaintiffs' Response to Defendants'** |
| | ) | **Motion to Dismiss** |
| OFFICER KATHY TRAUTMAN<br>c/o Toledo Police Department<br>525 North Erie Street<br>Toledo, Ohio 43624-1393 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| CAPTAIN JEFF HENESSEY<br>c/o Toledo Police Department<br>525 North Erie Street<br>Toledo, Ohio 43624-1393 | ) | |
| | ) | |

| | |
|---|---|
| and | ) |
| | ) |
| KATHY TRAUTMAN, in | ) |
| her individual capacity | ) |
| c/o Toledo Police Department | ) |
| 525 N. Erie Street | ) |
| Toledo. Ohio 43624 | ) |
| | ) |
| and | ) |
| | ) |
| JEFF HENESSEY, in | ) |
| his individual capacity | ) |
| c/o Toledo Police Department | ) |
| 525 N. Erie Street | ) |
| Toledo, Ohio 43624 | ) |
| | ) |
| Defendants | ) |

Now come Plaintiffs, by and through the undersigned Counsel. who hereby respond to Defendants' Motion to Dismiss as follows:

## INTRODUCTION

There is a long history between Plaintiff Magnum Towing ("Magnum") and Defendant City of Toledo.  Magnum is a licensed tow operator doing business mainly in the greater Toledo metropolitan area.  Plaintiff is also known as. under R.C. § 4921.30 and Toledo Municipal Code 765.01. as a "for hire motor vehicle transportation service".  In 1996, Magnum applied for a "Class A" license from the City of Toledo to perform "non-consensual" tows for the City of Toledo Police Department.  At the time. Magnum qualified for the "Class A" license in each and every respect.  After initially issuing Magnum a "Class A" license, the City of Toledo withdrew its approval for the "Class A" license and refused to add Magnum to the police tow list.

Litigation ensued.  Anna Petry d.b.a. Magnum Towing sued the City of Toledo seeking to gain the "Class A" license and access to the police tow list.  The case of *Petrey v. City of Toledo*,

2

*et al., Case No. 3:98 CV 7188.* United States District Court for the Northern District of Ohio.

Western Division, was eventually settled.  As part of the settlement. Magnum was issued a Class

A license and placed upon the police tow list.  Magnum began operations as a police "for hire

motor vehicle transportation service" in 1998, with its primary lot located at 515 Wamba Street,

Toledo, Ohio 43607.  Magnum added an auxiliary lot at 3400 South Avenue, Toledo. Ohio

43609 approximately six months later.  The settlement agreement was entered into with the

understanding that: a)  Magnum would move its operations permanently to the South Avenue

location.; b) Magnum was to complete the preparations for the South Avenue location within

"the time prescribed by law"; c) that the necessary special use permit (SUP) would be expedited

through the City of Toledo's Plan Commission and Council Commission; and, d) that the City

would cease any and all retaliatory actions against Magnum.

Police tows in the City of Toledo are allegedly governed by the Toledo Municipal Code

Chapter 765. et seq.  *Copy of code attached as Exhibit A.*  Effective November 25. 2003. TMC §

765.12 was amended to add § (h) which provides as follows:

> "(h) A permittee shall remit to the City of Toledo ten dollars ($10.00) on a
> quarterly basis for every vehicle towed or item of personal property towed
> separately, pursuant to this Section.  This payment to the City of Toledo
> shall be required regardless of whether or not the permittee receives
> payment from the vehicle owner.  Failure to remit this payment within
> thirty (30) days of invoice date from the City of Toledo Department of
> Finance shall be cause for revocation of Police Towing Permit."

TMC § 765 et seq. was further amended on November 25. 2003 to change the fee split for the

auctioned vehicles stemming from police ordered tows.  This amendment changed the fee split

from 80% of the proceeds applied towards the towers bill, with the remaining 20% going to the

City. to the City receiving 60% of the proceeds and the towers receiving only 40%.  While this

3

amendment was not to take effect until November 25, 2003, it was applied retro-actively to the previous quarter.

TMC § 765 et seq. was further amended on January 9, 2005 as follows (the amended language is underlined):

765.01 Definitions.

(e) "permitee" means any licensee holding a valid Class A or Class B safety permit. Any violation of this chapter by an agent or employee of the licensee shall be deemed a violation by the licensee.

(m) "Storage facility" means any location which has been licensed for storage, intended by an applicant to be licensed for storage or which has been designed by the Director of Public Safety as a storage facility, used or intended to be used to impound towed vehicles including any premises, auxiliary sites, lots, yard and buildings.

765.03. Class A tow permit fee and qualifications.

(a)(5) if the permittee wishes to engage in the storage of vehicles towed pursuant to police order, provide storage space for a minimum of one hundred (100) vehicles, at least three (3) of which shall be inside and at the permittee's primary premises. At least twenty-three (23) shall be at the permittee's primary premises and the remainder may be at an approved auxiliary site. Permittees authorized to make heavy duty tows for the Police Department shall, in addition, provide storage space for three (3) semi-tractors and trailers at the permittee's primary premises or at an approved auxiliary site.

765.05 Safety equipment and premises requirements.

(e)(3) if a Class A licensee wishes to engage in the storage of vehicles towed pursuant to police order, any open area storage facility which is used for storage, shall be enclosed with a solid, non-transparent, well maintained, substantial fence which shall be at least eight (8) feet in height (with the lower six (6) feet of same non-transparent) with a monitored electronic alarm system.

765.09. Police ordered towing and storage.

4

(b) When the Police Records Section orders inside storage for a police ordered tow, it shall be the duty of the Class A permittee to store the towed vehicle inside a facility operated by the licensee to protect it for evidentiary purposes or tow the vehicle to a facility designated by the Director of Public Safety.

765.15.  Tow directly to storage facility.

(a) Any police ordered tow shall be promptly and directly made to the licensee's primary premises or, in the case of a heavy duty tow, to the licensed premises or auxiliary site of the licensee or to a storage facility owned or operated by the City of Toledo at the direction of the Police Department.

A new Section was also added: 765.12.  Fees for police ordered tows by Class A permittees.

(I) For any vehicle towed to a City of Toledo owned or operated storage facility, a permittee shall be permitted to charge the City of Toledo up to $55.00 per vehicle for any vehicle as described in paragraph (a) above and up to 65% of the fees listed in paragraphs (b), (c), (d), (e) and (f) above. No permittee shall be required to remit ten dollars ($10.00) per vehicle for any vehicles towed to a City of Toledo owned or operated storage facility.

On or about September 2, 2005, the City of Toledo opened its own impound lot at Dura Avenue. Since the City's lot opened, all police ordered tow calls Magnum has received have been ordered to be taken to the City owned lot. The City of Toledo has further made it clear that absent special circumstances, all future police ordered tows will be directed to the City owned lot. The City of Toledo has further ordered that all vehicles towed for the Toledo Police, including those vehicles which may currently be stored at the various towers lots, are to be taken to the City's lot. Fees to be paid to the towers, including tow fees and storage fees already accrued, any future storage fees, as well as junk vehicle and auction vehicle fees, will be discounted to 65% of what would normally be owed. *See* Exhibit A, as well as amended TMC §

5

765.12 (1).

Since the conclusion of the first lawsuit putting Magnum on the police tow list, Magnum was to be treated no better and/or no worse than any other tow operator on the police tow list. From the inception of Magnum's entry into the market as a police tow operator, the City of Toledo has engaged in unfair and retaliatory actions against Magnum. The City has made it clear that they would still prefer Magnum not to be on the police tow list, which would effectively put Magnum out of business.

Magnum had no choice but to file suit if it wanted to stay in business. Plaintiffs filed the instant action in October of 2004. Defendants answered, and the parties then engaged in settlement talks. Discovery was effectively stayed. When it became apparent that the parties could not reach a settlement agreement, Plaintiffs filed their First Amended Complaint on or about September 15, 2005. In addition, Plaintiffs filed for Partial Summary Judgment on or about November 30, 2005, a matter still pending before the court. Defendants filed a Motion to Dismiss Plaintiffs First Amended Complaint on or about November 1, 2005, asserting that Counts I through VI of Plaintiffs should be dismissed pursuant to Federal Civil Rule 12 (b)(6). Defendants further assert that the balance of Plaintiffs First Amended Complaint should then be dismissed pursuant to Federal Civil Rule 12 (b)(1), claiming that the court lacks pendant jurisdiction to hear those claims. Plaintiffs disagree with Defendants' assertions, and maintain that Defendants Motion to Dismiss must be denied.

**STANDARD OF REVIEW**

Federal Civil Rule 12 (b)(6) allows for Plaintiffs' claims to be dismissed for "failure to state a claim upon which relief may be granted". When reviewing a Motion to dismiss pursuant

6

to Federal Civil Rule 12 (b)(6). "the facts and allegations of a complaint are to be presumed true and all reasonable inferences are to be made in the plaintiff's favor. *Coyne v. American Tobacco Co.* (C.A.6. 1999), 183 F.3d 488. Furthermore, "[t]he district court must construe the complaint in a light most favorable to the plaintiff, accept all of the factual allegations as true. and determine whether the **plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief.**" *Columbia Natural Resources, Inc. v. Tatum* (C.A.6. 1995), 58 F.3d 1101. 1109(emphasis added).

## ARGUMENT

Defendants first argue in Section III A of their Motion to Dismiss that Plaintiffs can show no set of facts entitling Plaintiffs to declaratory relief that "the Toledo Municipal Code Chapter 765 is invalid and unenforceable and that Defendants be enjoined from enforcing said Municipal Code." *1ˢᵗ Amended Complaint*, Count I, ¶ 28. The gist of Defendants argument is that the provisions of the Ohio Revised Code are inapplicable to the City of Toledo. The City relies upon R.C. § 4921.02 (A)(2), the principle of "Home Rule" authority to circumvent the State Code, and finally, claims that the State Code has "no application to the City's regulation of police towers in its own proprietary interest." *Motion to Dismiss*. Page 2.

The City misconstrues R.C. § 4921.02 (A)(2) to conclude that the "provisions of R.C. Chapter 4921 therefore have no application to police towing in the City of Toledo". *Motion to Dismiss*, Page 8. R.C. § 4921.02 (A)(2) provides:

> (A) "Motor transportation company." or "common carrier by motr vehicle," includes every corporation, company. association. joint-stock association. person, firm, or copartnership. and their lessees. legal or personal representatives, trustees, and receivers or trustees appointed by any court, when engaged or proposing to engage in the business of transporting persons or

7

property. or the business of providing or furnishing such transportation service,
for hire. whether directly or by lease or other arrangement. for the public in
general, in or by motor-propelled vehicles of any kind, including trailers. over any
public highway in this state. All laws regulating the business of motor
transportation, their context notwithstanding, apply to such motor transportation
company or common carrier by motor vehicle. "Motor transportation company",
as so used. does not include any person, firm. copartnership. voluntary
association, joint-stock association, company, or corporation. wherever organized
or incorporated: (2) Insofar as they own. control, operate, or manage motor
vehicles used for the transportation of property, operated exclusively within the
territorial limits of a municipal corporation, or within such limits and the
territorial limits of municipal corporation immediately contiguous to such
municipal corporation:

There is no dispute that the City of Toledo is not a "Motor transportation company" subject to the

provisions of R.C. § 4921 et seq. The City does not even engage in towing. let alone towing

outside of the municipality. However. that's not the real question. The question is whether

Magnum. and the other police towers for that matter. are "Motor transportation companies",

subject to and governed by R.C. § 4921 et seq. They obviously are. Magnum. as well as all the

other police towers, engage in towing outside the Municipality of the City of Toledo. as well as

engage in private pay consensual tows. The towers are perfectly entitled to do this. As such,

Magnum is subject to and governed by R.C. § 4921 et seq.. and is not governed by TMC 765 et

seq. Magnum's status. which governs the statutory regulations it must adhere to. does not switch

back and forth on a per tow basis. Magnum, and the other towers, either fall under R.C. § 4921

et seq. or they do not. Plaintiffs again have the ability to show that Magnum does in fact fall

under the rubric of R.C. § 4921 et seq. A simple reading of the statute with a recitation of

Magnum legal business activities shows this. As such, Plaintiffs can clearly "show a set of facts"

which would entitle them to relief and preclude dismissal of their claim.

The City goes on to argue that its' "Home Rule" authority permits it to regulate Magnum

8

in contravention of the State code.  As stated in Defendants brief, Article XVIII. Section 3 of

Ohio's constitution does grant the City of Toledo the power to "exercise all powers of local-self

government and to adopt and enforce within their limits such local police, sanitary and other

similar regulations, **as are not in conflict with the general laws**." (Emphasis added).  TMC 765

et seq. is rife with regulations directly in conflict with numerous provisions of the Ohio Revised

Code, i.e., the various incarnations of the fee split for auction vehicles have all been in direct

conflict of R.C. § 4513.62.  Defendants rely on the case of *City of Cincinnati v. Reed*, (1985), 27

Ohio App. 3d 115 in support of their contention that the "Home Rule" principle exempts the City

from the mandates of Ohio's Revised Code.  There is an important distinction from the case at

hand and *Reed*.  In *Reed* the court found Cincinnati's regulatory scheme to be "fully consistent

with the federal and state enactments" (in that case the Interstate Commerce Act and R. C. §

4923).  In the case at hand, TMC 765 et seq. is not "consistent" with Ohio's Revised Code, in

fact it directly contradicts Ohio's Code.

Finally, Defendants maintain that the "municipal-proprietary" exception to preemption

applies to Plaintiffs' claim that Ohio's Code preempts TMC 765.  In *Petrey v. City of Toledo*,

(C.A.6, 2001) 246 F.3d 548, the Sixth Circuit Appellate court held Toledo's code provisions

(relative to Class A towers) are not preempted by 49 U.S.C. § 14501 (c) (Interstate Commerce

Commission Termination Act).  While *Petrey* would appear to be controlling in claims of

Federal preemption, Defendants cite no authority that the "municipal-proprietary" exception

applies to claims of State law preemption.  Furthermore, Toledo's Municipal Code has

undergone numerous changes since the ruling in *Petrey*.  To dismiss Plaintiffs claim at this point

would be premature.

9

Defendants next argue in Section III B of their Motion to Dismiss that Plaintiff can show no set of facts entitling Plaintiffs to relief for the damages stemming from the $10.00 per police tow fee the City has required Plaintiffs to pay. *1st Amended Complaint*, Count II. The City argues Plaintiffs' lack standing to assert this claim. *Motion to Dismiss*, Page 2, Pages 11 through 13. Since the November 25, 2003 amendment to the Municipal Code allows police towers to charge individuals who in fact retrieve their vehicles after a police ordered tow $85 for the tow, the City maintains the $10 fee "is therefore one that is borne by the vehicle owners and not the tow operator permittees and therefore should be dismissed for want of standing." *Id.*, Page 12. This is fallacious reasoning at it's best.   TMC § 765.12 § (h) specifically states:

> "(h) A **permittee** shall remit to the City of Toledo ten dollars ($10.00) on a quarterly basis for every vehicle towed or item of personal property towed separately, pursuant to this Section. **This payment to the City of Toledo shall be required regardless of whether or not the permittee receives payment from the vehicle owner. Failure to remit this payment within thirty (30) days of invoice date from the City of Toledo Department of Finance shall be cause for revocation of Police Towing Permit."** (Emphasis added).

TMC § 765.12 § (h) states nothing about the vehicle owners paying the $10 fee. The "permittees" (tow operators) are required to pay the fee. The towers get the bill, and are required to pay the City regardless of whether they get paid **anything** for the work performed. It is the towers footing the bill, and it is the towers who are damaged by the $10 fee, and it is the towers who suffer the consequences for not paying the fee. Under the City's argument, a retailer would have no standing to protest a $100,000 per year fee for the right to sell milk because the retailer could always "add" on to what the retailer charges the public for a gallon of milk. While in such a case the public could certainly complain about the exorbitant costs of milk to anyone who

10

might listen, it is only the retailer, the party that is paying the fee, that has legal standing to protest the $100,000 per year fee. So too is the case at hand, it is the towers who have standing to protest the $10 per tow fee. The City's argument that Plaintiffs lack standing to protest the $10 per tow fee lacks merit.

The City further contends that Plaintiff cannot possibly show any set of facts whereby a $10 per tow licensing fee could be considered excessive or arbitrary. *Motion to Dismiss*, Page 12,13. The case of *Cox v. New Hampshire*, (1941) 312 U.S. 569, at 577 is informative in that it states that there is nothing contrary to the Constitution in the charge of a fee limited to purpose of meeting the expenses incident to the administration of the licensing statute and to the maintenance of public order. The operative word in the *Cox* ruling is "limited". The $10 per tow fee levied upon the towers bears little, if any, relation to the actual expenses incurred in the administration of the licensing statute at issue. Rather, the addition of the $10 per tow fee pursuant to the November 2003 amendment to the Municipal Code is and was about creating revenue for the City. More importantly. Plaintiffs are entitled to the opportunity to show that the $10 per tow fee is excessive and contrary to law, thus precluding dismissal of Count II of Plaintiffs' Amended Complaint pursuant to Federal Civil Rule 12 (B) (6).

Next, the City argues in Section III C that it "has not exacted a taking by opening its own tow lot; nor has it somehow violated claimed due process rights". *Motion to Dismiss*, Page 13. As an initial matter. Plaintiffs would contend that the Defendants undeniably have violated Plaintiffs due process rights on a minimum of two occasions, as is set forth in Plaintiffs Motion for Partial Summary Judgment. As has been stated, in January of 2005, the City passed an amendment to the Toledo Municipal Code. This amendment was passed in anticipation of the

11

City opening it's own storage lot for police ordered towed vehicles. The net effect of the amendment was to reduce the tow fees Magnum would receive from $85 per tow to $55 per tow, as well as virtually eliminating the fees Magnum had been receiving for storage of vehicles, auctioned vehicles, and junked vehicles.

Contrary to the City's contentions, Magnum has been given no due process relative to the loss of Magnum's property interest in storing police ordered tow vehicles, nor any due process relative to the City reducing the per tow fee from $85 to $55. The City just went ahead and did it. Magnum is afforded no opportunity for hearing, no procedural due process whatsoever. The City effectively stated we are going to take $30 out of your pocket for every police tow and eliminate your right to collect storage fees, and if you don't like it, tough. Not to be repetitive, but Plaintiffs Motion for Summary Judgment directly addresses this issue so Plaintiffs' argument will be restated herein in response to Defendants Motion to Dismiss.

The threshold question is whether Magnum has a constitutionally protected property interest in collecting fees for storing police ordered tows and in getting $85 per police tow as opposed to $55. Plaintiffs would maintain that said interests are protected and cannot be taken away absent due process. "The Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person has **already acquired** in specific benefits." *Board of Regents of State Colleges, et al. v. Roth,* 408 U. S. 564, 576 (1972) (emphasis added). The City's attempt to deprive Magnum of 35% of the fees which Magnum had already accrued prior to the City opening it's own lot clearly violates the procedural protection of property afforded by the Fourteenth Amendment. *See* Exhibit A, as well as amended TMC § 765.12 (I). These fees had already accrued and the right to collect them had already been acquired prior to

12

the City opening it's own lot and implementing the January amendment to the Municipal Code.

Once the City opened it's own lot and took away all of Magnum's interest in collecting any storage fees as well as taking away $30 per police tow, Magnum's due process rights were equally trampled upon. Magnum had "already acquired" a claim of entitlement to store police tow vehicles and collect $85 per police tow. Magnum paid their fees and renewed their license in January of 2005, prior to the amendment to the Municipal Code. The class A license was to be valid for a year. Magnum had to comply with all of various regulations imposed by the Municipal Code, including all of the Code provisions regarding storage facilities and the storage of particular vehicles, prior to having their license renewed. It is noteworthy that even under the new Municipal Code as amended in January of 2005, Magnum is still required to comply with all of the provisions regarding storage facilities for a Class A license even though the City no longer permits Magnum to store police tow vehicles. In short, Magnum has complied with the legislation burdens as imposed by the Municipal Code with the reasonable expectation that they would have the benefits as set out in the pre-January 2005 amendment to the Municipal Code. Not only does Magnum have a claim of entitlement to store police tow vehicles and receive $85 per tow. Magnum, prior to the City opening their own lot on September 2, 2005, did in fact store police tow vehicles, collect the fees as specified in the pre-January 2005 Code, and collect $85 per tow. These were benefits Magnum had **already acquired** prior to the City implementing the January amendment to the Municipal Code. As such, the City taking away these benefits without any procedural due process given violates Magnum's Fourteenth Amendment rights.

The City's actions in taking away $30 per tow and the right to store police tow vehicles and collect fees violates not only Plaintiffs' procedural due process rights, but further violates the

13

Fifth Amendment's (as applied to the States via the Fourteenth Amendment) prohibition against the State taking property without just compensation. The City's actions **do** amount to a flat out "taking" of Magnum's property. The City has maintained that the January amendment taking away $30 per police tow and taking away the right to store police tow vehicles and collect fees does not amount to a "taking" triggering constitutional protection. The City's argument relies on the case of *D.A.B.E., Inc. v. City of Toledo,* (N.D. Ohio, 2003) 292 F. Supp. 2d 968. The City's reliance is misplaced. The Plaintiffs in *D.A.B.E.* alleged a regulatory taking which denied them economically viable use of their land. The court in *D.A.B.E.* held that while Toledo's smoking ban may adversely affect the Plaintiffs' bar businesses. it did not amount to a taking. Plaintiffs in the case at hand are not saying that the City is "taking" an economically viable use of Plaintiffs' land. Plaintiffs realize that they may store other non-police tow vehicles at their site or use their land for numerous other purposes. What the Plaintiffs are saying is that they had a constitutionally protected property interest in collecting $85 per police tow and in collecting storage fees for storing police tows. The Plaintiffs in *D.A.B.E.* asserted no such property interest in allowing smoking in their establishments. The City's argument is akin to saying that it's O.K. to suppress your free speech, as long as we don't impinge upon your freedom of religion. The fact that Magnum may use it's land for other purposes does not absolve the City of responsibility for depriving Magnum of their rights. Each and every time the City deprives Magnum of the right to collect $85 for a police tow it literally "takes" $30 out of Magnums pocket. Each and every time the City deprives Magnum of the opportunity to store vehicles and collect fees it literally "takes" money out of Magnum's pocket. Each and every time Magnum is forced to accept 65% of the fees it is entitled to it literally "takes" money out of Magnum's pocket.

14

Defendants arguments in Section III, D, E, and F all allege absence of a contract between Magnum and the City. The City uses this contention to maintain that Counts IV, V, and VI of Plaintiffs claim should be dismissed. Defendants mischaracterize Plaintiffs claims. First, basic contract law allows agreements to be enforceable even absent a formal written, single agreement signed by both parties. Plaintiffs should have the opportunity to show that facts exist to prove the existence of an enforceable agreement. Again, to succeed on its 12(b)(6) motion, Defendants must prove that there are <u>no</u> set of facts whereby Plaintiffs would be entitled to relief. The Defendants have not met that burden.

Furthermore, Defendants in Section III D make much of the change in Plaintiffs First Amendment Complaint whereby Plaintiff deleted the word "contract" from the heading in Plaintiff's Count IV. It is not in dispute that contractual rights are afforded constitutional protection. However, Defendants fail to acknowledge or recognize that there are other rights and interests which are not necessarily contractual but non-the-less are afforded protection under both the United States Constitution and Ohio's Constitution. Even if it can show that there is not a contract between the parties (a point Plaintiff certainly does not concede). Plaintiffs still have rights and interests entitled to constitutional protection. Plaintiffs have extensively presented their position on this issue both here in this response and in Plaintiff's Motion for Partial Summary Judgment, so the argument will not be repeated here.

Finally. Defendants maintain that the remainder of Plaintiff's claims should be dismissed for lack of pendant jurisdiction. Plaintiffs need only show they have viable claims involving Federal issues for this court to retain jurisdiction over any of Plaintiff's claims that are based primarily on state law. Plaintiffs in this response and in their Motion for Partial Summary

15

Judgement have done this. Defendant's Motion to Dismiss Counts 7,8,9,10 and 11 should be denied.

## CONCLUSION

Defendants have failed to show that Plaintiffs cannot possibly prove any set of facts entitling Plaintiffs to relief. As such, Defendant's Motion to Dismissed is denied.

Respectfully Submitted,

Timothy A. Magee, Esq. (#0066023)
347 N. Main Street, Suite 3
Bowling Green, Ohio 43402
Ph. (419) 353-1856
Fax (419) 353-1858
E-mail: magee_law@cros.net

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

A copy of the forgoing was sent to James Burkhardt, Esq. City of Toledo Department of Law, via hand delivery this _____ day of December, 2005.

Timothy A. Magee

16

07/08/2005 12:28 FAX 419 245 3251     VEHICLE IMPOUND OFFICE   → MAGNUM              ☏001/002

# TOLEDO POLICE DEPARTMENT

**525 North Erie**
**Toledo, Ohio 43624**
**Phone (419) 245-3399**
**Fax    (419) 245-3251**

Michael J. Navarre                                    Jeffrey S. Hennessy
Chief of Police                                       Captain, Records Section
Director of Police Operations

## CONFIDENTIAL

Please deliver the following pages to:

Name: _____     Date:   **7-8-05**

Firm:   **All Tow Permittees**              Pages:  **2**
                                                    (Including Cover)

From:   **Captain Hennessy**

**See attached.**



The information and/or documents contained in this transmission are confidential and legally privileged. They are intended ONLY for the person or entity named above. If you are not the intended recipient, you are hereby notified that any dissemination, distribution, disclosure or copy of this communication is strictly prohibited. If you have received this telecopy in error, please immediately notify us by telephone (call collect if long distance) to confirm that you will destroy all copies of this transmission.

*Faxed on 7-13-05 7 X 12:46 AM*

The new Toledo Police Impound Lot will be open within the next 45 days.
This lot is located at 198 Dura Avenue, near Detroit.  When the lot opens, all
vehicles towed for the Toledo Police will be towed promptly and directly
there, unless otherwise directed by the Police Records Bureau.

Towers will bill the City on a monthly basis, and will receive $55 per
vehicle for a normal tow.  Other fees will be paid up to 65% of the current
prices.

In order to make a smooth transition, it will be necessary to determine which
towers wish to remain on the police tow list as we have others interested in
towing for us.

Please indicate below if you wish to continue towing for the City of Toledo
Police Department.  Please sign and Fax back to us no later then 8:00 a.m.
on 7/13/2005.  If you have any questions, please call Captain Hennessy at
245-3103.


___✓___    Yes, I wish to remain on the tow list when the police impound
           lot opens.


_____    No, I will no longer be towing for the City Police when the
           police impound lot opens.


_____          ___7-12-05___
Owner or President                     Date