# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | | |
|---|---|---|
| MAGNUM TOWING & RECOVERY, LLC | ) | CASE NO. 3:04 CV 7671 |
| 3400 South Avenue | ) | |
| Toledo, Ohio 43607 | ) | |
| | ) | |
| and | ) | JUDGE JAMES G. CARR |
| | ) | |
| ANNA PETREY | ) | |
| 3400 South Avenue | ) | |
| Toledo, Ohio 43607 | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| | ) | |
| CITY OF TOLEDO | ) | |
| 525 North Erie Street | ) | |
| Toledo, Ohio 43624-1393 | ) | |
| | ) | **REPLY TO DEFENDANTS'** |
| and | ) | **RESPONSE TO PLAINTIFFS'** |
| | ) | **MOTION FOR PARTIAL** |
| | ) | **SUMMARY JUDGMENT** |
| OFFICER KATHY TRAUTMAN | ) | |
| c/o Toledo Police Department | ) | |
| 525 North Erie Street | ) | |
| Toledo, Ohio 43624-1393 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| CAPTAIN JEFF HENESSEY | ) | |
| c/o Toledo Police Department | ) | |
| 525 North Erie Street | ) | |
| Toledo, Ohio 43624-1393 | ) | |
| | ) | |

| | |
|---|---|
| and | ) |
| | ) |
| KATHY TRAUTMAN, in | ) |
| her individual capacity | ) |
| c/o Toledo Police Department | ) |
| 525 N. Erie Street | ) |
| Toledo, Ohio 43624 | ) |
| | ) |
| and | ) |
| | ) |
| JEFF HENESSEY, in | ) |
| his individual capacity | ) |
| c/o Toledo Police Department | ) |
| 525 N. Erie Street | ) |
| Toledo, Ohio 43624 | ) |
| | ) |
| Defendants | ) |

Now come Plaintiffs Magnum Towing and Recovery, LLC and Anna Petrey who hereby Reply to Defendants' Response to Plaintiffs Motion for Partial Summary Judgment as follows:

**BACKGROUND**

Plaintiffs have filed for partial summary judgment on Plaintiffs due process claims as asserted in Plaintiffs' Complaint. Plaintiffs in the Motion have cited two occasions in particular whereby Plaintiffs were removed from the police tow list without being afforded due process. Plaintiffs have further asserted that Defendants as an ongoing policy, relative to Defendants opening of their own lot for the storage of vehicles, have deprived Plaintiffs of their constitutional right to due process.

Defendants have responded to Plaintiffs' Motion, basically admitting that Plaintiffs were on the two occasions in question removed from the police tow list, but claiming no process was due Plaintiff because the July 14, 2003 removal "did not involve a suspension or revocation" (Def. Resp., p.3) and that the June 4, 2004 was "self effectuating" (Def. Resp., p.4). Defendants further claim that their deprival of Plaintiffs' right to store and collect fees for the police tows,

2

including the taking of a portion of the fees already accrued by Plaintiffs, does not offend Plaintiffs' due process rights as the deprivation stems from a "legislative enactment" (Def. Resp., p.2). Defendants' arguments miss the point. There are no factual issues in dispute in these particular instances, and Plaintiffs' are entitled to judgment as a matter of law.

**DISCUSSION**

Plaintiffs' original primary place of operations was at 515 Wamba Street, Toledo, Ohio. As part of the settlement agreement in the case of *Anna Petrey, d.b.a. Magnum Towing and Recovery v. City of Toledo, et al.,* U.S. District Court Case No. 3:09CV7188, it was agreed and understood that Plaintiffs would be moving their primary business location to 3400 South Avenue, Toledo, Ohio. *See* attached Exhibit A, Settlement Agreement. Plaintiffs received their building permit for the South Avenue site on or about October 2, 2002. *See* Exhibit B, affidavit of Anna Petrey. Construction started on the new building at South Avenue, on or about October 25, 2002, with "BoWellCo" the general contractor. *Id*. On or around March 20, 2003 Plaintiffs, *with the consent and approval of Defendants* moved their business operation to the South Avenue site. *Id*. As part of opening the new South Avenue lot, Defendants made certain requests of Plaintiffs to comply with in order to operate out of the South Avenue site, to wit, besides the office trailer and existing storage container, Defendants requested Plaintiffs install a divider fence, install a raised walkway, and provide a second vehicle storage container. *Id*. Plaintiffs complied with all of these requests. *Id*. Progress on the building at South Avenue was progressing as fast as possible. Any delays in construction were outside of Plaintiffs control, and were in fact directly related to acts or non-acts on the part of the Defendants, i.e. despite numerous requests, it literally took months for the City to come out and authorize the water/sewer hookups. *Id*.

Plaintiffs performed police tows from the South Avenue site under a valid tow license/permit until July 14, 2003, when Plaintiffs were removed from the tow list for the reason that Plaintiffs' building construction was not progressing to the Defendants satisfaction. *See* Exhibit C, Suspension Notice. Plaintiffs' appealed the suspension notice the same day, and were informed that the suspension was "non-appealable". *See* Exhibit D, Appeal Letter. Plaintiffs were not afforded any due process and were not returned to the list until after appealing to this Court.

Defendants maintain the July 14, 2003 suspension "did not involve a suspension or revocation" but "rather a prohibition against operating at a new location with (sic) having the requisite pre-approvals" (Def Resp. P.3). Defendants can call the July 14, 2003 suspension anything they like, but the facts are that Plaintiffs were operating (with Defendants consent and a valid license) out of the South Avenue location on July 13, 2003, and were summarily removed from the tow list on July 14, 2003. Plaintiffs appealed through the proper channels, yet were afforded no due process. As has been stated in Plaintiffs' Motion for Partial Summary Judgment, Plaintiffs have a constitutionally protected property interest in participating in police towing and are entitled to due process. "When protected interests are implicated, the right to some kind of prior hearing is paramount." *Board of Regents v. Roth,* 408 U.S. 564, 570 (1972). Again, it makes no difference how the Defendants want to characterize the July 14, 2003 suspension, because if Plaintiffs have a constitutionally protected property interest, Plaintiffs <u>must</u> be afforded due process. Plaintiffs have such a property interest, and were deprived of due process. As such, Plaintiffs are entitled to Summary Judgment in this instance.

Likewise, Plaintiffs are entitled to Summary Judgment relative to the June 4, 2004 suspension/revocation. Again, as of June 3, 2004, Plaintiffs were participating in police towing

under a valid license/permit. On June 4, 2004, Plaintiffs were summarily removed from the tow list, this time for allegedly failing to remit the $10 per tow fee back to the City. *See* Exhibit E, Revocation Notice. Again, Plaintiffs appealed the revocation the same day, with repeated requests that they remain on the list pending their appeal. *See* Exhibit F, Appeals. Again, Plaintiffs were informed that the revocation was "non-appealable" and were not put back on the list or given due process.

Contrary to Defendants' assertion that Plaintiffs "do not allege that they met this requirement" in reference to the $10 fee back to the City, Plaintiffs have always maintained that they did comply with the requirement, even though Plaintiffs maintain the $10 per tow fee back to the City is a hidden and excessive license fee contrary to law. In the June 2004 instance at issue, Plaintiffs had mailed a check to the City for the full amount claimed owed ($2,410.00) back on May 27, 2004. *See* Exhibit B, Affidavit of Anna Petrey. Defendants claim they didn't receive the check. It is interesting to note that of all towers submitting checks to the City, it's Plaintiffs' check that comes up missing. Defendants stated that the revocation was non-appealable, but that they would return Plaintiffs to the tow list if Plaintiffs brought a replacement check to the City. Plaintiffs hand delivered a replacement bank cashiers check to Defendants on June 11, 2004. Still Plaintiffs were not returned to the police tow list. Again, Plaintiffs were not afforded the process due them, and in this instance Plaintiffs were kept off the list a total of approximately 35 days.

Defendants' argument that TMC §765.12(h) (the $10 fee) is "self-effectuating" which somehow extinguishes any need to afford Plaintiffs any due process before eliminating Plaintiffs' property interest, again completely misses the point. Plaintiffs have a constitutionally protected property interest. That interest cannot be lawfully taken away absent due process. Even if one

5

accepts Defendants' proposition that TMC §765.12(h) is some sort of "special" license revocation not subject to appeal rights as set forth in the Toledo Municipal Code (or any due process for that matter), <u>all one is establishing is that TMC §765.12(h) is itself unconstitutional</u>. Once it's accepted that Plaintiffs' have a constitutionally protected property interest, they must be given due process. If TMC §765.12(h) is read to deprive Plaintiffs of due process, then TMC §765.12(h) is unconstitutional and contrary to law.

It is further rather presumptuous for Defendants to mischaracterize this Courts ruling denying Plaintiffs Motion for Temporary Restraining Order concerning the removal of Plaintiffs from the police tow list over the lost check issue. This Court denied Plaintiffs' Motion solely on jurisdictional grounds. Plaintiffs' Motion to get back on the tow list was filed under the 1998 case number, a case which had been settled. The issue was whether the Court had jurisdiction over the Motion for Temporary Restraining given that the Motion concerned matters somewhat outside the gambit of the settlement agreement from the 1998 case. In fact, Counsel's recollection of the phone conference hearing on the Motion is that the outcome may have been different were there a §1983 action before the Court. Well, obviously, this case is in part a §1983 action. The Court denied Plaintiffs' Motion for Temporary Restraining Order on jurisdictional grounds. It is presumptuous of Defendants to imply anything other than that, or to imply that this Court has already ruled on this issue.

In the June 2004 instance as in the previous instance, the facts are not in dispute. One day Plaintiffs were conducting police tows and storage under a valid license/permit, the next day Plaintiffs were off the tow list without due process being afforded. It is what it is, regardless of how Defendant tries to characterize it, and what it is is a violation of Plaintiffs' constitutionally protected due process rights. Plaintiffs are entitled to summary judgment on this issue as set out

above.

Plaintiffs have further requested summary judgment relative to the acts of the Defendant in opening the City's own storage lot on September 2, 2005. Even though Defendants passed the ordinance reducing the per tow fee from $85.00 to $55.00 and effectively eliminating the storage component of the police tow business (with the attendant storage fees) last January 2005, Plaintiffs <u>were</u> able to collect $85.00 per tow and storage fees up until September 2, 2005, the date the City opened its' own lot. However, once the City opened its' own lot, Plaintiffs storage fees were reduced by 35%, including fees that had already been accrued, and Plaintiffs' fees for towing were reduced from $85.00 to $55.00. *See* Exhibit G, Notice from Toledo Police Department. In point of fact, since September 2, 2005, *all* police tows performed by Plaintiffs have been taken to the City's lot. *See* Exhibit B, Affidavit of Anna Petry. Plaintiffs maintain the Defendants' acts in opening their lot violate Plaintiffs due process rights as well as amount to a taking without just compensation. Defendants make no argument on the taking issue, but rather simply state "Plaintiffs do not have a legitimate claim of entitlement to an 'already acquired benefit' of towing and storing police vehicles" (Def. Resp. P.2).

Of note is Exhibit G, the Notice given to Plaintiffs prior to the City formally opening its own lot. The notice states in part "When the lot opens, <u>all</u> vehicles towed for the Toledo Police <u>will</u> be towed promptly and directly there, unless otherwise directed by the Police Records Bureau. Tower will bill the City on a monthly basis, and will receive $55 per vehicle for a normal tow. Other fees will be paid up to 65% of the current prices." As this notice indicates, implementation of the January 2005 was intended to be all inclusive, including mandating that the towers accept "65% of the current fees" for fees, including storage fees, that had already accrued! For Defendants to even state that "Plaintiffs do not have a legitimate claim of

7

entitlement to an already acquired benefit..." in this particular instance stretches the bounds of credibility.

It is admittedly a much closer question as to the application of the January 2005 forward from September 2, 2005. Plaintiffs maintain that it had applied for and been granted a renewed Class A License, which was to be valid for one year (January of 2005 to January of 2006). Plaintiffs paid the licensing fee and complied with all of the requirements to renew their tow license. The TMC provisions in effect at the time of renewal was that Magnum would receive $85 per police tow as well as $12 per day for outside storage and $15 per day for inside storage. As stated in Plaintiffs Motion for Partial Summary Judgment, Plaintiffs has complied with the extensive burdens imposed by the TMC (including, without limitation, having a set amount of inside storage area, outside storage area, a monitored alarm system, etc.) in order to obtain a one year license. Plaintiffs still have to comply with these burdens even though the City no longer permits Magnum to store police ordered tows. Magnum does have a valid claim of entitlement to receiving $85 per tow and at least some storage fees for at a minimum the one year time period covered by Magnum's current license.

Were the one year license indisputedly a valid contract, there would be no need for further discussion on this issue. Contract rights are unquestionably constitutionally protected property rights. Unfortunately, whether there is a valid contract between Magnum and the City is certainly in dispute. Magnum maintains that there is a valid contract, the City maintains there is not.

This dispute leads to the question of whether Magnum's claim to $85 per tow and the right to storage fees under the TMC at the time Magnum's license was renewed, assuming *arguendo* that the license does not constitute a binding contract, is a claim to an already acquired

benefit worthy of constitutional protection.  In short, is the $85 per tow and storing police tow vehicles a property interest.

Again, when looking at what is required to obtain the tow license, the burdens imposed by the TMC that must be borne to keep the license, and that the license is for a one year period, leads one to conclude that Magnum does have a property interest in collecting $85 per tow and in storing police tow vehicles, at least through the end of 2005 (the license's time period). Defendants maintain that the January 2005 ordinance reducing the tow fees and effectively eliminating storage fees was a legislative act thereby not subject to due process concerns. Defendants cite *Federal Housing Administration v. Darlington, Inc.* 358 U.S. 84 (1958) and *Jackson Court Condominiums, Inc. v. New Orleans* 874 Fed. 2d 1070 (5th Cir. 1989) as support for this proposition.  The case at hand varies from these cases in one important aspect.  In the cases that Defendants cite, the legislative enactments really did not "take" anything away from Plaintiffs.  In the *Darlington* case, the legislative enactment at issue really just clarified an earlier law.  At issue was Defendant's claim that since the National Housing Act in force at the time Defendant began operating did not specifically preclude the housing of transients, Defendant was entitled to continue housing transients after the National Housing Act was amended to clarify that the housing of transients was not permissible.  Defendant in *Darlington* did not have any legitimate claim to an entitlement to house transients prior to the clarification of the Federal Housing Administration.  He had not been "approved" to house transients under the National Housing Act or by the Federal Housing Administration.  The Federal Housing Administration in enforcing the ban on transient housing was not taking anything away from Defendant. Defendant had no property interest to take.

Likewise, in the *Jackson Court Condominiums* case, Plaintiff Jackson Court did not have

9

a legitimate claim of entitlement which could be taken from them. Plaintiff bought property in anticipation of creating time-shares. Plaintiff bought the property knowing that there was potential bans on creating time-shares. Plaintiff bought the property, was banned from creating time-shares, and was denied a waiver to permit Plaintiff to create time shares. Again, the zoning ban on time-shares did not "take" anything from Plaintiff. Plaintiff did not already have the time shares created, nor did he have a "waiver" or any sort of approval for time-shares. The zoning ban took nothing from Plaintiff, as Plaintiff had nothing to take.

In the case at hand, Plaintiffs <u>do</u> have something to lose. The January 2005 ordinance takes away Plaintiffs right to collect $85 per tow, as well as collect fees for storing vehicles. Plaintiffs have a license for the year 2005. A license which when issued was predicated upon Plaintiff meeting numerous requirements <u>and</u> predicated upon Plaintiffs receiving certain fees in return for service. The Defendants changed the "deal" two thirds of the way through the one year licensing period. This change damaged Plaintiffs. The implementation of the January 2005 ordinance as applied to both the pre September 2, 2005 time period and post September 2, 2005 time period is and was a deprivation of Plaintiffs' constitutionally protected interests.

## **SUMMARY**

For the foregoing reasons, Plaintiffs are entitled to summary judgment on Plaintiffs due process claims stemming from the July 14, 2003 suspension, the June 4, 2004 suspension, and stemming from the January 2005 amendment to the Toledo Municipal Code as applied both pre-September 2, 2005 and post-September 2, 2005.

                                                   Respectfully Submitted,

                                                    _____
                                                    Timothy A. Magee, Esq. (#0066023)
                                                    347 N. Main Street, Suite 3
                                                    Bowling Green, Ohio 43402
                                                    Ph. (419) 353-1856
                                                    Fax (419) 353-1858
                                                    E-mail: magee_law@cros.net

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

      A copy of the forgoing was hand delivered to James Burkhardt, esq., City of Toledo Department of Law, on this _____ day of January, 2006.

                                                   _____
                                                               Timothy A. Magee