IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Magnum Towing & Recovery, LLC, *et al.*          Case No. 3:04CV7671

        Plaintiffs,

v.                                        ORDER

City of Toledo, *et al.*,

        Defendants.

This is a suit by a towing company against the City of Toledo. Plaintiff Magnum Towing and Recovery (Magnum) is a tower licensed to perform police-ordered tows of inoperable or abandoned cars within the city limits of Toledo.

Magnum claims the City's procedures for police-ordered tows violate federal and state law. Magnum alleges City officials deprived it of property interests without due process. Magnum also facially challenges specific Toledo Municipal Code provisions under the Due Process Clause and Ohio preemption doctrines.

Jurisdiction exists under 28 U.S.C. § 1331.

Pending are Magnum's motion for partial summary judgment and the City's motion to dismiss. For the reasons that follow, Magnum's motion shall be denied and the City's motion shall be granted in part and denied in part.

**Factual Background**

Magnum is a towing company located on South Avenue in Toledo. Magnum, which is owned by Anna Petrey, has a City license to perform non-consensual tows for the Toledo Police Department.

This case challenges City regulations governing how and when a tow operator can receive – or lose – a license to do police-ordered, non-consensual tows for the City. Magnum also challenges the City's ability to change its regulations with regard to such details as the fees paid to towers for such tows.[1] Police can order an unattended vehicle's removal: 1) if it obstructs traffic, 2) if it is wrecked and inoperable; or 3) in other circumstances specified by City's Code. T.M.C. § 308.08. Police arrange for removal by contacting the next Class A tower on the Police Department's rotating tow list in the same district as the vehicle. T.M.C. § 765.07.

The parties have a history of legal feuding. In 1998, Petrey sued the City because officials kept Magnum off the list of towers allowed to perform non-consensual tows. Whereas in this complaint Petrey claims state law preempts Toledo towing regulations, in her 1998 lawsuit she claimed federal law preempted local towing regulations. I agreed and granted summary judgment for Magnum. *Petrey v. City of Toledo*, 2000 WL 246446 (N.D. Ohio). City officials then placed Magnum on the list of towers eligible to perform non-consensual tows.

The City appealed my summary judgment decision, and the Sixth Circuit affirmed in part and reversed in part. *Petrey v. Toledo*, 246 F.3d 548 (2001). On remand, the parties entered into a settlement agreement in August, 2002.

---

[1] The case does not deal with general licensing issues for towers who do not handle police-ordered tows but instead respond to customer calls for tows.

At the time of Petrey's original litigation with the City, she her operation was located on Wamba Street in Toledo. Around the time of the settlement, she was relocating to her present South Avenue location. In the settlement, the City, in addition to paying Petrey about $10,000, agreed to permit Magnum to continue performing tows on the condition that Toledo City Council approve a special-use permit.

When Magnum first began operations at the South Avenue location, the premises did not conform to various Code requirements. Magnum alleges that the City agreed to allow it to operate despite such non-compliance.

Things have not gone smoothly for the City and Magnum since they entered into the settlement agreement. Magnum alleges the City has not honored the settlement agreement and engaged in unfair and retaliatory actions against Magnum.

Magnum asserts that the City, after initially allowing it to use the South Avenue location, revoked its police tow license due to the location's failure to meet Code requirements. Revocation, according to Magnum, was improper because the City: 1) had agreed to let Magnum operate despite non-compliance with certain Code requirements; and 2) excessively delayed in providing sewer and water services to the South Avenue facility. Magnum claims City officials stated the license revocation was not appealable.

Another dispute arose over payment of remittance fees to the City. At various times from 2003 to 2005, Toledo City Council approved changes to sections of Chapter 765 of the Toledo Municipal Code regulating police-ordered tows. After November, 2003, towers could charge $85 for a typical tow and $12 daily for storage, with $10 of the $85 tow fee to be remitted to the City to cover administrative costs. T.M.C. §§ 765.12, 765.13. Thus, the end result for towers is an increase

3

of five dollars from the sum they previously received, but towers are now required to remit $10 to the City.

The City requires towers to pay the remittance fees quarterly. The City suspended Magnum's license when it did not receive a quarterly payment from Magnum. Magnum insists it mailed the check and the City intentionally misplaced Magnum's payment. The City contends the ensuing license suspension was automatic following failure to receive payment from Magnum. It also contends, moreover, that the suspension was not appealable. The City lifted the suspension two weeks later after receiving a check from Magnum.

On January 31, 2005, Magnum accused the City of engaging in a pattern of retaliatory removals from the tow list and brought a motion before this Court to enforce the settlement agreement. Magnum's motion was denied because the language of that agreement did not state that this Court would retain continuing jurisdiction over the parties after dismissal of the case. Case No. 03:98CV7188 (Doc. 83).

The City states the two incidents in which Magnum was removed from the tow rotation list (first for failing to meet City Code requirements, then for failing to pay required fees), happened automatically on the occurrence or non-occurrence of required events, such as the payment of quarterly fees. Under the City's view, procedural due process was not required: the City uniformly removes from its list any tow operator who fails to pay required fees or meet Code requirements. Likewise, the City automatically reinstates tow operators when the City receives payment for fees or tow operators otherwise become compliant with city Code.

Magnum raises additional challenges to the City's relationship to and regulation of towers.

The disputes leading to this litigation arise in the context of changes in the City's overall relationship with police-tow licensees and the regulations governing that relationship.

Before September, 2005, a tower was responsible for taking the vehicle subject to a police-ordered tow to an approved storage facility for safekeeping. T.M.C. §§ 765.15, 765.17. Typically, the tower took the vehicle to its own lot, thereby earning storage fees. Before November, 2003, towers could charge up to $70 for a police ordered tow.

In November, 2003, Toledo City Council changed the percentage of revenue sharing from the proceeds from the auction of abandoned vehicles stemming from police ordered tows. Before November, 2003, 80% of the auction proceeds went toward the tower's bill (to cover the cost of storage and towing), while 20% went to the City. After November 25, 2003, the City received 60% of the proceeds and the towers received 40%. Magnum alleges the City applied the new revenue-sharing formula retroactively.

Additionally, in September, 2005, the City opened its own lot to store police-ordered tows. This caused Magnum to lose revenue in two ways. First, police began uniformly directing towers to bring police-ordered tows to the City lot, thereby denying towers the opportunity to earn storage fees. Second, the City reimbursed towers $55 for towing vehicles to the City-owned lot, instead of the $85 (minus the $10 remittance) towers previously received for police-ordered tows.

The City's stated goals in opening its own storage lot were to eliminate the expense of inspecting private tow storage facilities and generate storage fee revenue.

Magnum also contends the City has refused to pay for towing inoperable vehicles to the auction sites. The City states it never paid for tows to auction sites because towers were – and are – reimbursed with a portion of the auction proceeds.

5

Magnum's first amended complaint has ten counts. The second through fifth counts raise issues of federal law; the other counts raise issues of state law.

Magnum's federal claims are that the City violated the Due Process Clause of the United States Constitution by: 1) twice revoking or suspending Magnum's license to perform police-ordered tows; 2) retroactive reduction in both the rate the City paid Magnum for already-completed tows and the revenue sharing percentages for auctioned vehicles; 3) the City's failure to pay for tows to auction sites; 4) implementation of the $10 remittance from the $85 towing fee;[2] 5) opening the City-owned tow lot; and 6) prospectively altering the rates for police tows and percentage split of the profits from auctions.

Magnum's state law claims allege: 1) the City's ordinances regulating police-ordered tows are pre-empted by Ohio statutes governing towing services; 2) breach of contract; 3) unjust enrichment due to the City's refusal to pay for secondary tows to auction sites and the City taking a portion of proceeds of the sale of auction vehicles; 4) wrongful prosecution; 5) abuse of process; 6) intentional interference with business relations; and 7) breach of the 2002 settlement agreement.

In seeking dismissal of plaintiff's complaint, the City asserts that Magnum still has a towing license that permits Magnum to participate in the rotation list on the same basis as other licensed towers for police ordered tows. The City further states it is not seeking to revoke Magnum's license.

Magnum seeks partial summary judgment as to its due process claims.

## Discussion

### I. Federal Claims

#### A. The Administrative Fee Does Not Violate the United States Constitution

---

[2] The remittance fee was in effect from November, 2003, to September, 2005.

Magnum claims the $10 administrative fee is an illegal, arbitrary, and excessive license fee on Magnum in violation of due process and equal protection. (First Amended Compl. at 8-9, ¶¶ 29-31). The City argues Magnum lacks standing to challenge the fee and that the fee is constitutional.

The City states the owner of the vehicle towed is assessed the fee, not the tower. Magnum contends it owes the $10 remittance fee regardless of whether it has received payment from a vehicle's owner. The City admits Magnum's statement is correct, but notes that towers receive payment for their fees when the towed vehicle is sold at auction. *See* T.M.C. § 765.25.

### 1. Magnum Lacks Standing to Challenge the Fee

A party must assert his own legal rights and cannot base his claim for relief on the rights of others. *Coyne v. Am. Tabocco Co.*, 183 F.3d 488, 494 (6th Cir. 1999). To have standing, a party must allege an injury distinct from a harm suffered by others who are similarly situated. *ASARCO, Inc. v. Kadish*, 490 U.S. 605, 613 (1989).

An Ohio court found tow operators lacked standing to challenge Cincinnati Code provisions setting maximum fees for towing services under state and federal antitrust laws. *Cincinnati v. Reed*, 27 Ohio App. 3d 115, 119 (Ct. App. 1985) (stating "[s]tanding requires demonstration of a concrete injury in fact [. . .]").

Here, Magnum lacks standing because it seeks to assert the rights of vehicle owners who must pay the towing charges. Additionally, Magnum cannot show an injury: it has not alleged that it faces the risk of not receiving payment for the fee when the vehicle is sold at auction.

### 2. The Remittance Fee is Constitutional

Even if Magnum had standing, its federal constitutional challenge to the fee would still fail. First, the City correctly notes the $10 remittance fee is not a licensing fee. T.M.C. § 765.03(a)(1)

7

(describing the license fee required of Class A tow permittees). Thus, case law addressing challenges to excessive or arbitrary license fees is inapplicable here, where the fee is assessed vehicle owners and covers costs associated with administering the police-ordered tows.

This claim would, in any event, not succeed even if this were considered a license fee. A fee is not arbitrary or excessive if designed to meet the costs of administering a licensing act and keep order in the field licensed. *Kentucky Rest. Concepts v. City of Louisville*, 209 F. Supp. 2d 672, 692 (W.D. Ky. 2002). Magnum claim that there is a lack of correlatoin between the fee and the City's administrative costs. Similarly modest fees to defray adminitrative expenses have been upheld by federal, *Jasinski v. City of Miami*, 269 F. Supp. 2d 1341, 1348 n. 5 (S.D. Fla. 2003) (upholding a twenty-five dollar administrative fee), and state courts. *Sergeant's Towing, Inc. v. City of Portland*, 22 P. 3d 237, 243 (Ore. App. 2001) (same; $15 fee).

### B. Denial of Due Process

Magnum's third count states "[p]laintiffs have a constitutionally protected interest in conducting police tows" and that the City has "wrongfully deprived" Magnum of that interest "without due process and/or just compensation" in violation of the United States and Ohio Constitutions.

Magnum has a Class A towing license permitting it to conduct police-ordered tows. Magnum's present suit claims the City violated the Due Process Clause of the United States Constitution by: 1) opening a City-owned lot and requiring towers to bring police-ordered tows to that lot for vehicle storage; 2) enacting the $10 remittance fee; and 3) removing Magnum from the rotation to perform police-ordered tows for failing to meet Code requirements and pay quarterly remittance fees.

Magnum's first two contentions raise similar challenges to the City's authority to enact subsequent ordinances that have prospective effects. Its third contention challenges the procedures used to remove Magnum from the tow rotation on two occasions.

### 1. Procedural Due Process and Subsequently Enacted Legislation

Procedural due process must be afforded before a state actor deprives a person of life, liberty, or property. *Bd. of Regents v. Roth*, 408 U.S. 654, 569 (1972). Absent such interest, there is no obligation to provide due process prior to the state's action. *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983); *Roth*, 408 U.S. at 569. The first question, thus, is whether Magnum has a cognizable liberty or property interest in that which is being affected by the City's actions.

To have a property interest in something, a person "must [. . .] have a legitimate claim of entitlement to it." *Roth*, 408 U.S. at 577. A legislative body can enact legislation that is prospective in nature, even if that legislation "limit[s] or interfere[s] with previously acquired rights", without granting individuals due process. *Fed. Hous. Admin. v. Darlington, Inc.*, 358 U.S. 84, 91 (1958) ("So long as the Constitution authorizes subsequently enacted legislation, the fact that [the legislation's] provisions limit or interfere with previously acquired rights does not condemn it.").

The City correctly notes the Supreme Court has held that "[t]hose who do business in the regulated field cannot object if the legislative scheme is buttressed by subsequent amendments to achieve a legislative end." *Id.*; *see also Jackson Court Condo., Inc. v. New Orleans*, 874 F.2d 1070, 1074 (5th Cir. 1989) (holding procedural due process not required because moratorium on time-share condominiums was legislative); *Q.C. Constr. Co., Inc. v. Gallo*, 649 F. Supp. 1331, 1335 (D.

R.I. 1986) (stating plaintiff who bought land for development prior to enactment of moratorium not entitled to procedural due process).[3]

Indeed, the Supreme Court observed it is "impracticable that everyone should have a direct voice in [a piece of legislation's] adoption." *Bi-Metallic Inv. Co. v. State Bd. of Equalization*, 239 U.S. 441, 445 (1915). Although ordinances passed by a legislative body can "affect the person or property of individuals [. . .] to the point of ruin[,]" the proper recourse for adversely affected individuals is the political process, not procedural due process as enforced by federal courts. *Id.*; *see also Foster v. Hughes*, 979 F.2d 130, 132 (8th Cir. 1992) ("Persons are entitled to procedural due process, in the form of an individual opportunity to be heard, only when the government makes an individualized determination, not when the government commits a legislative act equally affecting all those similarly situated.").

The City's amendments to its towing regulations affect all tow operators. The ordinances do not affect only Magnum.

The City Council enacted the changes to serve legitimate legislative ends: to increase revenues and facilitate administration of the tow program. The City Council sought to decrease the costs of its towing and vehicle storage program and expenses incurred from inspecting and maintaining storage facilities. The City also desired to increase public convenience.

All the legislative actions Magnum challenges (the remittance fee and change in the rates for police-ordered tows and opening of the City-owned lot and requirement that police-ordered tows be taken there) are valid regardless of the fact that Magnum received no individual due process

---

[3] Governmental action is considered legislative when an elected body makes general decisions that apply to classes of people or entities. *Q.C. Constr. Co., Inc.*, 649 F. Supp. at 1335.

before their enactment and implementation. Magnum's recourse is not here but through the political process by adoption of ordinances more favorable to private towers.

Thus, the City is entitled to dismissal of this aspect of Magnum's due process claims. Magnum's motion for partial summary judgment as to this claim shall be overruled.

## 2. Removal from the Tow Rotation for Code Violations

Next, Magnum alleges the City violated its due process rights when it suspended Magnum's Class A towing license and removed it from the tow rotation for failing to meet City Code requirements at its South Avenue location.

A license can be a property interest protected by due process, *see, e.g.*, *Mackey v. Montrym*, 443 U.S. 1, 12-13 (1979), including a license to operate a business.[4] *See* 16C Corpus Juris Secundum Constitutional Law § 1520 (citing *Goldrush II v. City of Marietta*, 482 S.E. 2d 347, 358 (Ga. 1997)). Possessing a business license does not, however, always automatically give the license holder a property interest. *See Quetgles v. City of Columbus*, 491 S.E. 2d 778, 781 (1997); *Benitez v. Rasmussen*, 626 N.W. 2d 209, 217-18 (2001) (no property interest in license to operate child-care business).

A government body violates substantive due process if it enforces ordinances in an arbitrary or discriminatory manner. *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974); *Harrington v. Harris*, 118

---

[4]

I note that, although Magnum may have a property right in its Class A license, the City Council may make changes in its tow program without violating the Constitution. *See, e.g., Fed. Hous. Admin.*, 358 U.S. at 91. Opening a City-owned tow lot and changing the rates for police-ordered tows do not take away Magnum's license. Magnum has cited no case stating it has a property right in always making the same amount of revenue from police-ordered tows. This claim, however, is distinct from Magnum's due process challenge, discussed in the preceding subsection, to the revised police tow regulations. Magnum here challenges the constitutionality of two incidents when the City suspended Magnum's Class A license.

F.3d 359, 368 (5th Cir. 1997). For example, arbitrary refusal to grant building permits violate substantive due process, *U.S. v. Wheeling Downs*, 72 F. Supp. 882, 885 (N.D. W. Va. 1947), as do ordinances giving officials unrestricted discretion in granting or denying permits. *Bailey v. Zoning Bd. of Review*, 179 A.2d 316, 317 (R.I. 1962); *Nat'l Mar. Union of Am. v. City of Norfolk*, 119 S.E.2d 307, 313 (Va. 1961); *see also* 16D Corpus Juris Secundum Constitutional Law § 1870. Likewise, depriving a property owner of a preexisting use can violate due process. *See, e.g., Goodspeed Airport, LLC v. East Haddam Land Trust, Inc.*, 2005 WL 1403822, *3 (D. Conn.,2005).

The City twice suspended Magnum's Class A license and removed Magnum from the tow rotation list. On the first occasion, the City states it removed Magnum from the rotation because construction on the South Street site was not progressing at a pace satisfactory to the City. Magnum alleges the City caused some of the delays by, *inter alia*, taking an overly long time to authorize water and sewer hookups.  Magnum also contends the City gave Magnum permission to operate out of the South Street site without meeting all Code provisions. The City states it did not suspend Magnum's license, but that Magnum was not legally operating out of the South Avenue location due to Code violations.

If Magnum's allegation that it received permission to operate out of the South Avenue lot before meeting all the Code's requirements is well founded, dismissal is not warranted. The City cannot grant permission to operate without having met Code requirements and then later summarily bar its continued operation solely for failing to meet those requirements.  To do so without some additional and legally acceptable justification would  arbitrarily deprive Magnum of its right to due process.

The City's motion to dismiss this aspect of Magnum's due process claims shall be overruled. Magnum's motion for partial summary judgment as to this aspect of its due process claims shall be overruled, without prejudice, as I find that the parties have not yet developed an adequate factual basis for adjudicating this claim.

### 3. Removal for Failure to Pay Quarterly Fees

The City also temporarily removed Magnum from the tow rotation for failing to pay a quarterly remittance fee. Magnum argues it mailed the payment but the City intentionally misplaced Magnum's check. Magnum claims it was not given due process before the City removed it from the tow rotation. The City states no process was due because removal is automatic when a tow operator does not make a quarterly payment.

The City can suspend a tower's Class A license and remove a tower from the rotation without giving it due process. That is because even assuming, *arguendo*, Magnum has a property interest in its Class A license, due process would not require the City to provide a hearing or notice prior to removing a tower from the rotation for failing to pay a quarterly fee.

In determining what procedural due process protections are required, a court must consider the: 1) private interest that will be affected by the government action; 2) risk of an erroneous deprivation of such interest through the procedures currently used; and 3) probable value, if any, of additional or substitute procedural safeguards. *Kratt v. Garvey*, 342 F.3d 475, 483 (6th Cir. 2003).

All three factors identified in *Kratt* weigh against requiring the City to provide more process before removing tow operators from the rotation for failure to pay fees. First, Magnum's private interest is minimal: a spot on the tow rotation does not prevent Magnum from otherwise operating

as a tower. Second, the acceptance of quarterly payments is a clerical task with little risk of error. Third, additional procedures would not provide much benefit or reduce the likelihood of error.

Regulatory schemes providing for automatic suspension of licenses on non-payment of mandated fees have been upheld in other contexts. Thus, courts routinely uphold automatic suspension of a driver's license for failure to pay traffic fines or otherwise comply with restrictions on driving rights. *See, e.g.*, *Mackey v. Montrym*, 443 U.S. 1, 12-13 (1979) (due process not violated by Massachusetts statute mandating suspension of driver's license for refusing to take a breath-analysis test for operating a vehicle while under the influence of alcohol); *Evans v. City of New York*, 308 F. Supp. 2d 316, 325-26 (S.D. N.Y. 2004) (motorist alleged state violated the Due Process Clause by automatically suspending his driver's license for failure to pay a fine; due process not violated because law was clear that a driver's license is suspended for failure to pay a fine).

This claim nonetheless survives the City's motion to dismiss because Magnum alleges the City intentionally misplaced Magnum's check in retaliation for prior disagreements. Such an act, if true, would violate substantive due process: the City cannot arbitrarily decide whose payments to accept and intentionally misplace the checks of disfavored towers. *See Wolff*, 418 U.S. at 558 (government violates due process if it enforces regulations in an arbitrary or discriminatory manner). Therefore, this claim survives only under the theory that the City intentionally misplaced Magnum's check, and Magnum will have to prove as much to succeed at trial.[5]

---

[5]

Magnum's pleading relating to this claim, if construed liberally, possibly could be read as alleging substantive due process and equal protection violations under the United States Constitution. Substantive due process and equal protection analysis as applied to government regulation of economic rights is not stringent. *Unity Ventures v. Lake County*, 631 F.Supp. 181, 198 (N.D.Ill.,1986). A court will employ the rational basis test to review both substantive due process and equal protection challenges to governmental action, unless the action impinges a fundamental right or uses a suspect classification. *Id.* (citation omitted). To survive rational basis review, the

**D. Proceeds from Auctioned Vehicles and Secondary Tows to Auctions**

Magnum's fourth cause of action alleges the City violated the United States and Ohio Constitutions by: 1) retroactively applying changes in the percentage towers receive upon auctioning towed vehicles; 2) refusing to pay towers for towing vehicles to the auction site; and 3) failing to acknowledge the preemptive effect of O.R.C. § 4513.62, relating to disposition of vehicles ordered into storage, in computing payments owed to Magnum.

First, the City may change its ordinances with prospective application but "[r]etroactive legislation is generally disfavored." *E. Enter. v. Apfel*, 524 U.S. 498, 501 (1998). Retroactively operating laws are not, however, absolutely prohibited. *Jasinski v. City of Miami*, 269 F. Supp. 2d 1341, 1348 (S.D. Fla. 2003) (finding no due process violation in the retroactive application of a $25 administrative charge for non-consensual tows of privately owned vehicles).

The parties have not briefed the issue of retroactive application of changes in the fee structure and the split of auction proceeds. Dismissal is not warranted, therefore, with regard to Magnum's allegation that the City retroactively applied changes to its towing regulations.[6]

---

government action must bear a rational relationship to a legitimate governmental objective. *Id.* (citing *Massachusetts Bd. of Retirement v. Murgia*, 427 U.S. 307 (1976) (equal protection) and *Goldblatt v. Town of Hempstead*, 369 U.S. 590 (1962) (substantive due process)). Rational basis review is deferential: "the governmental policy at issue will be afforded a strong presumption of validity [. . .]" *Midkiff v. Adams County Reg'l Water Dist.*, 409 F.3d 758, 770 (6th Cir. 2005).

The City's enactment of changes to Code provisions passes rational basis review. First, Magnum does not have a fundamental right to be on the rotation for police-ordered tows. Second, the City regulations challenged here affect tow operators, and tow operators are not a suspect class. Therefore, rational basis review applies. The City has offered rational reasons for enacting changes to the towing regulations: namely, to raise revenue and reduce the expense of monitoring tow storage sites. The City's process for collecting remittance fees is performed in a rational manner to raise revenue for the City in a way that is administratively convenient.

[6] To the extent Magnum alleges the City applied other changes to the towing Code retroactively, those

Second, the City only needs to pay Magnum for police-ordered tows in accordance with Municipal Code provisions. The Code states towers receive set rates for police-ordered tows and a specified percentage when the vehicles are sold at auction. T.M.C. §§765.12, 765.25. Towers are not entitled to any additional payments. If Magnum has a problem with the legislative scheme establishing how towers are reimbursed, Magnum can seek to have City Council change the system. *Bi-Metallic Inv. Co.*, 239 U.S. at 445; *Foster*, 979 F.2d at 132. Therefore, the City does not have to pay Magnum for tows to auction sites because such requirement is not in the Code.

Third, § 4513.62 of the Ohio Revised Code does not preempt Toledo Municipal Code provisions governing the sale of vehicles at auction. In Ohio, a state statute preempts a local ordinance if: 1) the state statute is a general law; 2) the ordinance conflicts with the statute; and 3) the ordinance constitutes an exercise of police power, not the self-government. *City of Canton v. State*, 95 Ohio St. 3d 149, 151 (2002). If a municipal ordinance only affects entities within the municipality itself – with no extraterritorial effects – it is within the power of local self-government and is a matter for determination of municipality. *Cleveland Elec. Illuminating Co. v. City of Painesville*, 15 Ohio St. 2d 125, 129 (1968).

Magnum cannot satisfy the third element of preemption: the City's ordinances regulating police-ordered tows have no extraterritorial effects. Toledo police cannot order tows outside the City. Therefore, the City can – and must – follow its own Code provisions, and not § 4513.62, in disposing of towed vehicles.

## II. State Law Claims

---

claims also survive the City's motion to dismiss, without prejudice to the City's right to renew and brief such challenges in a motion for summary judgment.

In its motion to dismiss, the City only briefed two of plaintiff's state law claims: breach of contract and unjust enrichment.[7]

### A. State Law Preemption of Municipal Ordinances

Magnum's first count contends the Ohio Revised Code's section on "Motor Transportation Companies" (Chapter 4921) preempts the City's regulations governing police-ordered towing. *See* O.R.C. § 4921 *et seq*.

Ohio law provides that: 1) if a motor transportation company complies with relevant state laws, local ordinances cannot operate against it, O.R.C. § 4921.25; and 2) tow operators are subject to regulation by the Public Utilities Commission and not local ordinances. O.R.C. § 4921.30.

Ohio law provides, however, that preemption does not apply to municipal ordinances regulating business entities that operate "motor vehicles used for the transportation of property, operated exclusively within the territorial limits of a municipal corporation, or within such limits and the territorial limits of municipal corporations immediately contiguous to such municipal corporation." O.R.C. § 4921.02(A)(2).

Toledo's Code provisions fit within this exception: the Toledo police may only order tows of vehicles located within the City; and the Toledo Municipal Code requires police tow operators who handle non-consensual tows to be located within the City. T.M.C. § 765.05(e)(1).

Therefore, the towers do not act as Toledo Police Department towers outside of the City's territorial limits. The towers' activities are "operated exclusively within the territorial limits of a

---

[7] The City asked me to dismiss the other state law claims by declining to exercise supplemental jurisdiction if, as the City expected, I dismissed Magnum's federal law claims. Contrary to the City's expectation, I am not dismissing all of the federal claims. Therefore, I will exercise supplemental jurisdiction and all state claims not briefed by the City survive this order.

17

municipal corporation."[8] O.R.C. § 4921.02(A)(2). As such, Chapter 4921 of the Ohio Revised Code does not preempt the Toledo Municipal Code provisions at issue.

Magnum, moreover, is not a "for-hire motor carrier" under O.R.C § 4921.30 when performing police tows because Magnum is not hired by vehicle owners for such tows. *See State v. Pitzenbarger*, 6 Ohio Misc. 134, 136-37 (Com. Pl. 1965) (holding that a carrier is "for hire" only if the property owner contracts with the carrier to transport goods).

### B. Breach of Contract

Magnum's fifth count alleges breach of contract based on the City's refusal to pay for secondary tows to auction sites. This claims fails because Magnum does not have a written agreement with the City regarding secondary tows.

The Toledo City Charter requires all contracts with the City to be in writing, executed by the Mayor, and approved by City Council. Toledo City Charter § 228. Contracts not complying with these requirements are void. *Id.* A person doing business with a municipality is expected to know the "statutory limitations on the entity's power." *Brainard v. City of Toledo*, 118 Ohio Misc. 2d 158, 165 (Com. Pl. 2001). A party does not have a breach of contract claim against a municipality unless the contract in question was properly executed in accordance with the law's requirements. *Id.*; *Wright v. City of Dayton*, 158 Ohio App. 3d 152, 159-60 (Ct. App. 2004).

---

[8] The City recognizes the licensing authority of other state and local governments. Toledo Code exempts from City licensing requirements those tow operators located outside the City whose trucks are licensed under, *inter alia*, similar laws. T.M.C. § 765.02(b). Towers located outside the City cannot, however, be on the list to perform police-ordered (non-consensual) tows.

### C. Unjust Enrichment

Magnum's sixth count, which alleges unjust enrichment, claims the City is unjustly enriched by not paying Magnum for secondary tows to auctions and "taking a portion of proceeds" of vehicles auctioned. (First Amended Compl. at 11-12).

Under Ohio law, a municipality is not liable for unjust enrichment (quantum meruit) or quasi- and implied contracts. *Brainard*, 118 Ohio Misc. 2d at 158-59 (stating "unjust enrichment does not apply against municipal corporations"); *Wright*, 158 Ohio App. 3d at 159-60 (Ohio law does not support claims for unjust enrichment against municipalities). Therefore, the City is not liable for unjust enrichment.

### Conclusion

It is therefore,

ORDERED that

1. The defendant's motion to dismiss the second cause of action, challenging the constitutionality of remittance fee, be, and the same hereby is dismissed:

2. The defendants' motion to dismiss the third cause of action, alleging denial of due process be, and the same hereby is, granted with respect to all challenges to the City's ability to open its own tow lot and make subsequent changes (or amendments) to Code provisions, and overruled with respect to plaintiff's allegations concerning Magnum's removal from the tow rotation on two occasions;

3. The defendants' motion to dismiss the fourth cause of action, alleging deprivation of constitutionally protected rights be, and the same hereby is granted with respect to Magnum's demand for payment for secondary tows to auction sites and claim that the City does not follow

O.R.C. § 4513.62, and overruled with respect to allegations the City retroactively applied changes to the percentage towers would receive from auctions of vehicles;

4. The defendants' motion to dismiss the first cause of action, alleging state preemption of Toledo towing regulations, be, and the same hereby is granted;

5. The defendants' motion to dismiss the fifth cause of action, alleging breach of contract, be, and the same hereby is granted;

6. The defendants' motion to dismiss the sixth cause of action, alleging unjust enrichment, be, and the same hereby is granted; and

7. Magnum's motion for partial summary judgment as to its due process claims be, and the same hereby is denied, without prejudice to renew as to its claims relating to its removal from the tow rotation on two occasions.

So ordered.

/s/James G. Carr
James G. Carr
Chief Judge