**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| MAGNUM TOWING & RECOVERY, LLC )<br>3400 South Avenue )<br>Toledo, Ohio 43607 )<br>)<br>and )<br>)<br>ANNA PETREY )<br>3400 South Avenue )<br>Toledo, Ohio 43607 )<br>)<br>Plaintiffs )<br>)<br>vs. )<br>)<br>)<br>CITY OF TOLEDO )<br>525 North Erie Street )<br>Toledo, Ohio 43624-1393 )<br>)<br>and )<br>)<br>OFFICER KATHY TRAUTMAN )<br>c/o Toledo Police Department )<br>525 North Erie Street )<br>Toledo, Ohio 43624-1393 )<br>)<br>and )<br>)<br>CAPTAIN JEFF HENESSEY )<br>c/o Toledo Police Department )<br>525 North Erie Street )<br>Toledo, Ohio 43624-1393 )<br>) | CASE NO. 3:04 CV 7671<br><br>JUDGE JAMES G. CARR<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>**PLAINTIFFS' RESPONSE TO<br>DEFENDANTS' MOTION FOR<br>SUMMARY JUDGMENT** |

| | |
|---|---|
| and | ) |
| | ) |
| KATHY TRAUTMAN, in | ) |
| her individual capacity | ) |
| c/o Toledo Police Department | ) |
| 525 N. Erie Street | ) |
| Toledo, Ohio 43624 | ) |
| | ) |
| and | ) |
| | ) |
| JEFF HENESSEY, in | ) |
| his individual capacity | ) |
| c/o Toledo Police Department | ) |
| 525 N. Erie Street | ) |
| Toledo, Ohio 43624 | ) |
| | ) |
| Defendants | ) |

Now come Plaintiffs, by and through the undersigned Counsel, who hereby respond to Defendants Motion for Summary Judgment as follows:

**INTRODUCTION**

As the Court is well aware, there is an extensive history of acrimony between the parties in this case, going well back into the 1990's.  Anna Petry d.b.a. Magnum Towing sued the City of Toledo seeking to gain the "Class A" license and access to the police tow list.  The case of *Petry v. City of Toledo, et al., Case No. 3:98 CV 7188*, United States District Court for the Northern District of Ohio, Western Division, was eventually settled.  As part of the settlement, Magnum was issued a Class A license and placed upon the police tow list.  Magnum began operations as a police "for hire motor vehicle transportation service" in 1998, with its primary lot located at 515 Wamba Street, Toledo, Ohio 43607.  Magnum added an auxiliary lot at 3400 South Avenue, Toledo, Ohio 43609 approximately six months later.  The settlement agreement

2

was entered into with the understanding that: a) Magnum would move its operations permanently to the South Avenue location.; b) Magnum was to complete the preparations for the South Avenue location within "the time prescribed by law"; c) that the necessary special use permit (SUP) would be expedited through the City of Toledo's Plan Commission and Council Commission; and, d) that the City would cease any and all retaliatory actions against Magnum.

Since the conclusion of the first lawsuit putting Magnum on the police tow list, Magnum was to be treated no better and/or no worse than any other tow operator on the police tow list. From the inception of Magnum's entry into the market as a police tow operator, the City of Toledo has engaged in unfair and retaliatory actions against Magnum. The City has made it clear that they would still prefer Magnum not to be on the police tow list, which would effectively put Magnum out of business.

Magnum had no choice but to file suit if it wanted to stay in business. Plaintiffs filed the instant action in October of 2004. Defendants answered, and the parties then engaged in settlement talks. Discovery was effectively stayed. When it became apparent that the parties could not reach a settlement agreement, Plaintiffs filed their First Amended Complaint on or about September 15, 2005. Defendants filed a Motion to Dismiss Plaintiffs Complaint on or about November 1, 2005. Plaintiffs responded to Defendants Motion to Dismiss, as well as filing their own Motion for Partial Summary Judgment.

This Court, by order dated May 9, 2006, dismissed a number of Plaintiffs' claims under federal law. However, Plaintiffs federal claims for three specific instances survived. In particular, on July 14, 2003, Magnum was removed from the police towing list. The reason Magnum was removed from the list was that construction at Magnum's South Avenue location

was not proceeding quickly enough for the City's satisfaction. Magnum had been operating out of the South Avenue location with the full knowledge and consent of the City, prior to the suspension being imposed. Magnum appealed the suspension the same day, expecting to be re-instated to the tow list pending their appeal to the Tow Review Board, as is consistent with TMC § 765.26 (c) ("Should an appeal be made by the permittee to a suspension or revocation after receipt of the notice of the director of Public Safety, **said suspension or revocation shall be held in abeyance pending decision on the case by the Towing Board of Review**"). Magnum was informed that their removal from the tow list was "non-appealable" and was not returned to the towing list until Plaintiff filed for a Temporary Restraining Order with this court. The City afforded Plaintiff no procedural due process in this instance.

In the second instance, on June 4, 2004, Magnum was again removed from the police towing list. The reason Magnum was removed was for allegedly failing to remit to the City the $10 per tow "payment" which had been added to TMC § 765 et seq. pursuant to the November 25, 2003 amendment to the municipal code. Again, Magnum appealed the City's actions the same day. Again, Magnum was informed that their removal from the tow list was "non-appealable", and again Magnum was not put back on the tow list pending an appeal. Again, the City failed to afford Magnum the procedural due process owed to Magnum. Magnum has always maintained that they had in fact mailed the check for the $10 per tow fee to the City in a timely manner. Of special note is the fact that Magnum was informed that if they brought a replacement cashiers check to Defendants, they would be put back on the tow list. Magnum in fact did bring a replacement cashiers check to the City on June 11, 2004, but was not put back on the tow list.

The third federal law claim still pending before the Court concerns the city's retroactive application of the implementation of a law whereby the fee splits on auction vehicles between the towers and the City were changed from 80/20 in favor of the towers to 60/40 in favor of the City.  This change was signed into law effective December, 2003.  However, the Defendants had applied the new fee splits to the vehicle auction held in October of 2003.  Plaintiffs state law claims, including wrongful prosecution, abuse of process, intentional interference with business relations, breach of contract (the original settlement agreement), and intentional infliction of emotional distress, are also all still pending before the court awaiting trial.

Defendants have now filed for summary judgment on all of Plaintiffs remaining claims, alleging that there are no factual disputes remaining, and that Defendants are entitled to Judgment as a matter of law.  Plaintiffs disagree, maintaining that there are a number of factual disputes to be deciding by the jury, and that what facts are not in dispute, tend to favor Plaintiffs' position if anything.

**STANDARD OF REVIEW**

Summary Judgment is only appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  *Durham v. Nu'man,* 97 F.3d 862 (6th Cir. 1996)*, citing* Fed. R. Civ. P. 56 (c*).*  All facts, as well as all inferences drawn therefrom, must be viewed in the light most favorable to the nonmoving party.  *Id. citing Matsushita Electric Industrial Co., Ltd., et al. v. Zenith Radio Corp., et al.,* 475 U.S. 574 (1986)*.*  The nonmoving party must set forth specific facts showing that there is a genuine issue for trial.  Fed. R. Civ. P. 56 (e)*.*

**ARGUMENT**

FEDERAL CLAIMS

A close review of Plaintiff's first federal law due process claim is warranted, as such a review should prove to be largely dispositive of Defendant's Motion for Summary Judgment. Consistent with the settlement agreement, Plaintiffs obtained the proper building permit and began construction at the South Avenue site.  See Exhibit A, Affidavit of Kevin Trombley. Plaintiffs moved their operations to the South Avenue site in March of 2003.  Id.  It is not seriously in dispute that Plaintiffs moved their operation to South Avenue and were conducting business out of the South Avenue site with the consent and permission of the Police Department. Id.  Defendants even note in their Brief that "None of the individual Defendants could authorize Plaintiffs' violation of the T.M.C. by allowing them to occupy and operate the South Avenue property without securing an Occupancy Permit."  Defs. Brief at P. 5.  Plaintiffs of course deny they were violating any provision of the T.M.C., but the real point being Defendants implicitly acknowledge that Plaintiffs were operating out of South Avenue with the knowledge of and consent of the Police.

The Court, in its' May 9, 2006 Order, states:

> If Magnum's allegations that it received permission to operate out of the South Avenue lot before meeting all the Code's requirements is well founded, dismissal is not warranted.  The City cannot grant permission to operate without having met Code requirements and then later summarily bar its continued operation solely for failing to meet those requirements.  To do so without some additional and legally acceptable justification would arbitrarily deprive Magnum of its right to due process.

The City now argues that Defendants "never waived the Special Use permit conditions contained in Ordinance No. 504-02 for the South Avenue location" and that the Police didn't

have authority to waive this issue, therefore Defendants were justified in removing Magnum from the tow list. Whatever. Plaintiffs could argue *ad nauseum* that the Police are agents of the City and that Plaintiffs reasonably relied upon the representations of the Police etc. etc. However, a review of the documents obtained via discovery paints a very clear picture of what occurred, as well as providing a clear picture of the Defendants malicious intent to harm Magnum, and effectively put Magnum out of business.

Captain Henessey, of his own accord, through Sargent Ryder, removed Magnum from the tow list on July 14, 2003. Copy of the suspension notice attached to Exhibit B, Affidavit of Counsel. What is further attached to Exhibit B are copies of various notes and messages from and to the Toledo Police Department and the City Building Department. The exchanges between the Police and the Building Department being on July 17, 2003, after Magnum had already been removed from the list. The police suspended Magnum first, then tried to find a reason for the suspension after the fact. Again, it should be noted that Magnum appealed the July 14, 2003 suspension the same day, but was not kept on the tow list and was told the suspension was "non-appealable."

The tone of the exchanges between the Police Department and the Building Department is again quite clear: get Magnum. And if you don't have anything, find something. Interesting in the notes out of the Building Department's file is the handwritten reference to "back taxes/real estate" with the phone number of the Lucas County Auditor handwritten in as well. Again, the message is clear, find something on Magnum. Also of note is Defendants' reluctance to turn over documents from the State Sales Tax case brought against Magnum and Anna Petrey, in particular, documents regarding who pushed for the criminal prosecution. See Exhibit B,

7

Affidavit of Counsel, and attachments thereto, in particular correspondence to Sales Tax Division.

Again, the message was quite clear. Find something on Magnum so that Defendants can justify the July 14, 2003 suspension. It also is quite indicative of what was really going on when one looks at the at the handwritten notes dated <u>July 25, 2003.</u> The note states part way down, "as long as there (*sic*) doing something we can't do anything." This particular document has been singled out as Exhibit B-1 as attached to the affidavit. Not so coincidentally, Magnum was returned to the tow list on July 25, 2003, once the police department got the message that there was not anything the Building Department could "get" Magnum on. All of this is clear and convincing evidence that Magnum was unfairly targeted, as well as repeatedly denied due process. It should be left to the jury to make their own conclusion regarding this evidence and the other evidence Plaintiffs intend to submit at trial.

Defendants were not satisfied with only being able to remove Magnum from the tow list from July 14, 2003 to July 25, 2003. The documents from the Building Department's file go on beyond July 25, 2003, all with the same essential message from the Police Department, get Magnum (including correspondence directly from Captain Henessey to Clinton Wallace in the Building Department). Defendants argument for a grant of Summary Judgment on Magnum's claim relative to the July 14, 2003 suspension for "code violations" is unfounded. Defendants' took Magnum off the tow list first, tried to find the "violations" second, then had to put them back on the list when they couldn't find anything.

Likewise, Defendants claim for Summary Judgment on Magnum's second federal claim is unwarranted. Magnum admittedly will have a very difficult time "proving" Defendants

intentionally misplaced their payment check of May 27, 2004. However, Magnum can certainly prove that they appealed the suspension of June 4, 2004 and were not put back on the tow list pending the appeal. They further can prove that, <u>at the request of Defendants' and with the promise that Magnum would be returned to the tow list</u>, Magnum provided a replacement cashier's check and still was not returned to the tow list. Magnum can further prove that subsequent to the June 2004 check incident, the City "misplaced" Magnums' paperwork and was not going to issue the check owed Magnum for doing police tows. <u>See</u> Attached Exhibit A, Affidavit of Kevin Trombley. The jury should be given the opportunity to draw their own conclusions regarding the June 2004 check incident.

Magnums third federal law claim regarding the retroactive application of the new law changing the auction splits likewise should not be discarded pursuant to Defendants' Motion. Here, the facts do speak for themselves. The statute changing the auction splits did not become law until signed by the Mayor in December of 2003. The law was applied retroactively to at least the auction held October 25, 2003. <u>See</u> attached Exhibit C, auction results from 10/25/03. Pursuant to Defendants Motion, Defendants <u>may</u> have attempted to change the fee splits back in August of 2003, pursuant to Ordinance 499-03. But the fact remains that the August 2003 Ordinance did not change the fee splits. (As a side note, I do not believe the August Ordinance was signed into law by the Mayor, and the attachments referred to in Defendants brief were not included in the copy sent to me.) Defendants correctly state the law when citing *Cincinnati School Dist. Bd. of Edn. V. Hamilton Cty. Bd. of Revision,* (2001) 91 Ohio St. 3d 308, in that first a court must determine whether the statute was expressly intended to apply retroactively. If so, the court then questions whether the statute is substantive, rendering it unconstitutionally

9

retroactive. For a claim of substantive retroactivity to survive, there must be a showing "of some impairment, burden, <u>deprivation</u>, or new obligation. . . ." created. *Bielat v. Bielat,* (2000) 87 Ohio St. 3d 350. In the case at hand, Magnum was deprived of 40% of the auction fee monies, receiving only 40% of the auction fees, rather than the 80% of the auction fees they were entitled to. Magnum's third federal claim should survive Defendants' Motion as well.

<u>STATE LAW CLAIMS</u>

Defendants further claim they are entitled to summary judgment on Plaintiffs' state law claims. At the heart of Plaintiffs' state law claims is the contention that Defendants singled out Magnum and intentionally set out to do them harm. The evidence uncovered from the Building Departments file alone shows Defendants' intent in this respect. Whether Defendants involvement in the numerous criminal prosecutions of Plaintiffs; the numerous suspensions and threats of suspension targeted towards Plaintiffs; the misuse of the County Auditor's office, Sales Tax office, Fire Marshal's office, Department of Parks and Neighborhoods office, and the Building Department office; and Defendants' other overtly hostile acts and statements (Captain Hennessy states, in his deposition, that Plaintiffs are "dead beats" and previously stated Plaintiffs shouldn't be in business) are sufficient to support a verdict in favor of Plaintiffs on Plaintiffs state law claims is a question of fact that needs to be presented to the jury. Plaintiffs should be allowed their day in Court on their state law claims.

<u>CONCLUSION</u>

Plaintiffs have provided ample evidence in support of their claims. The jury should have the opportunity to weigh that evidence, as well as the additional evidence that will be presented at trial. Defendants' Motion for Summary Judgment should be denied in full.

Respectfully Submitted,

*/s/Timothy A. Magee*
Timothy A. Magee, Esq. (#0066023)
347 N. Main Street, Suite 3
Bowling Green, Ohio 43402
Ph. (419) 353-1856
Fax (419) 353-1858
E-mail: magee_law@cros.net

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

A copy of the forgoing was sent to James Bishop, City of Toledo Department of Law, via electronically and ordinary mail this 3rd day of July, 2007.

/s/ *Timothy A. Magee*

Timothy A. Magee